506 P.2d 1355

**Ruby B. DUNFORD, Representative of the Estate of Alice Hillman, Deceased, Plaintiff-Appellant,**

v.

**UNITED OF OMAHA, Defendant-Respondent.**

**No. 10933.**

Supreme Court of Idaho.

March 2, 1973.

Reversed and remanded with directions.

Albaugh, Bloem, Smith & Pike, Idaho Falls, for plaintiff-appellant.

McDevitt & McDevitt, Pocatello, for defendant-respondent.

McQUADE, Justice.

Alice Hillman brought an action to recover on an individual life insurance policy applied for by her husband, Robert K. Hillman. From an adverse judgment, after trial to the court, Alice Hillman appealed. During the pendency of the appeal, Alice Hillman died, and Ruby Dunford, representative of the estate of Alice Hillman, has been substituted as appellant.

Robert K. Hillman was a practicing attorney in St. Anthony, Idaho. On September 15, 1967, Hillman conferred with two sales agents representing United of Omaha and Mutual of Omaha about life insurance and health and accident insurance. On this date Hillman applied for an individual life insurance policy in the face amount of $10,000. This application was to United of Omaha and is the policy application in dispute here. Two other insurance applications, not in issue here, were also signed by Hillman on September 15, 1967.

A check to the insurance company for $65.00 was made out by Hillman at the time the three insurance applications were made. Of the total of $65.00, $13.80 represented two monthly premium payments of $6.90 per month on the policy application here in question, and the remainder was for the other two policy applications. At the time the applications were made, Hillman, then forty-one years old, also signed documents giving his bank authority to pay the premiums as they should become due.

In return for the pre-payment of the premiums, Hillman received a "conditional premium receipt" from the agents. This receipt provided that the insurance would be effective on the date of application or the date of any required medical examination, subject to requirements on the reverse side of the receipt. Two of these requirements were a finding by the company that the proposed insured was in-

surable under its rules for the policy applied for and issuance of the policy exactly as applied for within sixty days from the date of application.

Hillman complied with the physical examination requirement and was notified in October that the bank service premium plan was acceptable. On November 2, 1967, the Omaha office issued the policy for which appellant commenced this action, and sent it to its agent in Pocatello. The application had been changed in two respects, first the premium rate had been changed from $6.90 per month to $10.00 per month and secondly, a provision excluding any waiver of premiums upon disablement was added. The changes were caused by such factors as findings of the company concerning a drinking problem by Hillman and by the fact that Hillman had become forty-two years old since the application was made. A ratification form, acknowledging the changes, was sent with the policy for Hillman's signature.

On November 5, 1967, Hillman was killed in a car accident. The policy was returned to Omaha after respondent's general agent in Pocatello learned of Hillman's death; and the policy was then cancelled. There had been no delivery of the policy to Hillman and he had not signed the ratification form. Respondent's agents then tendered return of the premiums which tender was refused by Hillman's widow, Alice Hillman.

The district court held that no policy of life insurance on the life of Hillman was in force on the date of his death. The court ruled that the up-rated premium was a material deviation from the application, making the altered policy a counter-offer requiring acceptance by Hillman.

Although several findings of fact are disputed, appellant principally assigns error to

(1) the court's finding that the "conditional premium receipt" prevented an insurance contract from arising, (2) the court's decision that the policy was merely a counter-offer and not binding as a contract of insurance without acceptance, and (3) the court's failure to award attorney fees to appellant. The principal question to be decided by this appeal is whether the life of Robert K. Hillman was insured by the United of Omaha Insurance Company on the day he died.

■ Two general contract rules of construction favor appellant in this appeal. Appellant correctly asserts the general rule that a contract which is ambiguous or doubtful in its terms should be construed most strongly against the party preparing it.[1] The insurance contract here in issue was prepared by the insurance company. Appellant also correctly asserts that in cases involving insurance contracts, where the language may be given one of two meanings, one allowing recovery and the other forbidding it, the contract should be construed in favor of the insured.[2]

Appellant relies heavily on the "temporary contract of insurance theory" set forth by this Court in Toevs v. Western Farm Bureau Life Insurance Co.[3] That theory holds that under certain circumstances a conditional premium receipt creates a temporary contract of insurance subject to a condition, rejection of the application by the insurance company.[4] Some of the circumstances leading to use of the temporary contract theory in *Toevs* included unequal bargaining power, complex and ambiguous phrasing in the contract, and use of a conditional premium receipt.[5]

■ Since the conditional premium receipt in this case stated that the insurance would be effective on the date of application or the date of any required

---

1. Big Butte Ranch, Inc. v. Grasmick, 91 Idaho 6, 415 P.2d 48 (1966).

2. *See* O'Neil v. New York Life Ins. Co., 65 Idaho 722, 152 P.2d 707 (1944); Watkins v. Federal Life Ins. Co., 54 Idaho 174, 29 P.2d 1007 (1934).

3. 94 Idaho 151, 483 P.2d 682 (1971).

4. *Id.*, 483 P.2d at 686.

5. *Id.*

medical examination, subject to requirements on the reverse side of the receipt, a temporary contract of insurance was in effect. The two most pertinent requirements here were that Hillman be found insurable and that the policy be issued as applied for within sixty days. Hillman was therefore covered unless the company properly rejected the application before his death. Since Hillman received no notice of any rejection or change of terms by the insurance company before his death, the temporary contract of insurance was still valid and in force.

Notice is necessary in this case in order to allow an applicant who is temporarily covered to obtain insurance elsewhere, especially since the applicant here complied with all that was required of him by the insurance company. Hillman paid two months' premiums, signed an authorization to honor checks drawn by the insurance company on his bank, and took a medical examination. It is true that some jurisdictions have held that a failure to give notice of termination does not leave the temporary insurance in force.[6] We are of the view, however, that notice must be given where there is a temporary contract of life insurance. Termination of temporary insurance against loss by fire, wind or hail requires proper notice of such rejection to be given the insured.[7] The same rule should apply where a valid temporary contract of life insurance is in force.

There was a rejection of the application by the insurance company here, but the required notice of the rejection was not given the insured. When an insurance policy is issued materially differing from the policy applied for, such policy is a counter-offer which under the general rule of contracts amounts to a rejection of the application.[8] Here the policy issued was different from the policy applied for and was thus a rejection of the original application.[9] Hillman, had he lived, could not have been forced to accept a policy with higher premiums than set forth on his application.[10] The company's ratification form showed its realization that the issued policy was really a counter-offer. The change in monthly premium from $6.90 to $10.00 is thus a material difference between the application and the issued policy. However, since no notice of the counter-offer, which amounted to a rejection of the temporary insurance contract, was communicated to Hillman before his death, the temporary contract of insurance was still in effect.

Appellant argues that attorney fees should be awarded in this case as provided for under § 41–1839 of the Idaho Code.[11] Respondent urges that the two-year statute of limitations bars the award of attorney fees in this case.[12] Contrary to respondent's argument, any attorney fees in this case are a part of the relief which may be accorded a claimant in an action on the breached contract, which is governed by the five-year statute of limitations.[13] Thus,

6. See Leube v. Prudential Ins. Co., 147 Ohio 450, 72 N.E.2d 76, 2 A.L.R.2d 936 (1947) ; Eyring v. Kansas City Life Ins. Co., 234 Mo.App. 328, 129 S.W.2d 1086 (1939).

7. See cases set forth in Annot., 14 A.L.R.3d 568, § 11.

8. Annot., 2 A.L.R.2d 943, 982 (1948).

9. See 1 Couch on Insurance 2d (Anderson) § 7:20 (2d ed. 1959).

10. See 1 Couch on Insurance 2d (Anderson) § 12:2, 12:4 (2d ed. 1959).

11. Idaho Code § 41–1839 provides in pertinent part as follows:
"(1) Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, to pay to the person entitled thereto the amount justly due under such policy, certificate or contract, shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action."

12. See Idaho Code § 5–219(2).

13. See I.C. § 5–216.

reasonable attorney fees will be awarded to appellant.

Appellant is awarded the sum of $10,000 with interest thereon from the 5th day of November, 1967, at the rate of 6% per annum, and the sum of $1,000 as and for reasonable attorney fees on appeal. The trial court shall fix a reasonable attorney fee for trial of the action.

Judgment reversed and remanded with directions to render judgment in favor of appellant and to determine reasonable attorney fees for trial of the action. Costs to appellant.

DONALDSON, C. J., and SHEPARD, J., concur.

BAKES, Justice (concurring specially):

Given the fact that this Court has accepted the "temporary contract of insurance" theory in Toevs v. Western Farm Bureau Life Insurance Co., 94 Idaho 151, 483 P.2d 682 (1971), the conclusion reached by Justice McQuade in his majority opinion, i. e., that the temporary contract of insurance continues until the new policy which constitutes the counter-offer is delivered or communicated to the insured, reasonably follows. I therefore concur in the result reached in the majority opinion.

McFADDEN, Justice (dissenting).

It is my opinion that the judgment of the trial court should be affirmed. This case was tried on the theory set out in the appellant's complaint that the respondent insurance company, United of Omaha, on November 2, 1967, issued an insurance policy insuring the life of Robert K. Hillman in the sum of $10,000; that subsequent to the issuance of the policy, Hillman was killed and that the named beneficiary, appellant Alice Hillman, was entitled to the face amount of the policy plus attorney's fees. The respondent insurance company by its answer denied that there was any valid policy of insurance issued on the life of Robert K. Hillman. It alleged that an application for such insurance had been made and that after the company had received his application together with the medical report, following a medical examination, the company had rejected the application. Also, the insurance company alleged that it made a counteroffer to Hillman on different terms and at a different premium rate which could not become effective until accepted in writing by Hillman during his lifetime.

Following trial to the court sitting without a jury, findings of fact, conclusions of law and judgment were entered in favor of the defendant company. In summary, the trial court found that Hillman had applied for a five year term insurance policy in the face amount of $10,000; that the application by Hillman was for insurance at standard terms with premium computed at standard risk rates on a monthly payment plan; that Hillman had paid two monthly payments in advance; that he received a receipt for the premium paid which contained inter alia two requirements for the insurance applied for to become effective,

"[t]he proposed insured is determined by the Company at the home office in Omaha, Nebraska, to the insurable, in accordance with its usual rules and practices, on the basis and for the policy applied for, effective on the date of the application or the date of any medical examination required by the Company, whichever is later;

The policy is issued exactly as applied for within 60 days from the date of the application."

The trial court further found that Hillman took the physical examination; that the report of the medical examiner was forwarded to the company on October 25, 1967; that based on the medical examination, the company determined Hillman was a non-standard risk but was acceptable for insurance at an increased rate; that the company determined Hillman was not insurable in accordance with its rules and practices for the policy on the basis for which he applied. The trial court also found that on November 2, 1967, a policy of insurance at a higher monthly premium

rate was issued and forwarded to respondent's agent at Pocatello, Idaho, with conditional delivery instructions to procure Hillman's written acceptance of the policy and certification that he was in good health free from injury and had no change in health since the date of the application. The instructions also provided that if there were a change of health the policy was to be returned.

The trial court further found that Hillman died on November 5, 1967 and that the issued policy and ratification form were received by the company's agent on November 6, 1967. The trial court also found that the policy was issued on a materially different basis than applied for by reason of the extra premium and was never in effect and that it was a counteroffer requiring communications and acceptance during the lifetime of Hillman, which was not accomplished.

The trial court's findings of fact are fully sustained by the record. At no time was there ever presented to that court the theory that Mr. Hillman was covered by any temporary contract of insurance. In fact, the appellant objected to the introduction in evidence of defendant's exhibit C which had attached to it the blank form of the "Receipt" which is now being argued by appellant as the basis for the so-called temporary contract of insurance.

It has long been the rule of this Court that it will not consider on appeal issues not originally raised in the trial court. Weatherby v. Weatherby Lumber Co., 94 Idaho 504, 492 P.2d 43 (1972); Willows v. City of Lewiston, 93 Idaho 337, 461 P.2d 120 (1969); Bogert v. Kinzer, 93 Idaho 515, 465 P.2d 639 (1970); Oregon Shortline R. R. Co. v. City of Chubbuck, 93 Idaho 815, 474 P.2d 244 (1970); Williams v. Havens, 92 Idaho 439, 444 P.2d 132 (1968); Christensen v. Stuchlik, 91 Idaho 504, 427 P.2d 278 (1967). See also, Resource Engineering, Inc. v. Siler, 94 Idaho 935, 500 P.2d 836 (1972).

On appeal appellant interjected a completely new issue into this case, i. e. the theory that the decedent had in effect at the time of his death a "temporary contract of insurance." As pointed out above, this Court has consistently held it will not consider new issues interjected on appeal; therefore this issue should not be considered on appeal.

However, assuming that the "temporary contract of insurance" theory is before this court for consideration, the record here fails to establish such a contract. When Mr. Hillman filled out his application and paid the premiums on the proposed policy, he was given a receipt properly filled out which had been attached to the application. As found by the trial court, this receipt contained two requirements for the insurance to become effective, i. e. that the proposed insured is found by the home office to be insurable on the basis of the policy applied for and that a policy issue exactly as applied for within 60 days.

In examining this receipt, I find nothing ambiguous in its terminology, as was found in Toevs v. Western Farm Bureau Life Ins. Co., 94 Idaho 151, 483 P.2d 682 (1971).

While appellant relies heavily on Toevs v. Western Farm Bureau Life Ins. Co., supra, as authority for her position, that opinion (to which I dissented) can give but little aid here. Unlike this case, this Court in Toevs held that because of ambiguities in forms and documents submitted by the insurance company a temporary contract of insurance arose. Here the case was tried on the basis of a policy issued but undelivered. Here the deceased's application for insurance had been rejected by a counteroffer by the respondent insurance company which nullified the creation of a temporary contract of insurance. Annot. 2 A.L.R.2d 943, 994 (1948). In fact, Toevs recognizes that an insurance company has the right to terminate the temporary contract if it is dissatisfied with the applicant's risk before the policy is issued. See, Gaunt v. John Hancock Mut. Life Ins. Co., 160 F.2d 599 (2d Cir. 1947).

When an insurance policy is issued differing materially from the policy applied

for, such policy is a counteroffer which under the general rule of contracts amounts to a rejection of the application. Annot. 2 A.L.R.2d 943, 982 (1948); 1 Couch on Insurance (Anderson, 2d ed. 1959), §§ 7:8, 7:9, 7:20. This case is taken out of the realm of temporary insurance by the fact that the policy issued was different from the policy applied for and was thus a rejection of the original application. 1 Couch on Insurance (Anderson, 2d ed. 1959) § 7:20. Hillman, had he lived, could not have been forced to accept a policy with higher premiums than set forth on his application. 1 Couch on Insurance (Anderson, 2d ed. 1959) §§ 12:2, 12:4. The company's ratification form to be signed by Hillman disclosed that the issued policy was really a counteroffer. The change in monthly premium from $6.90 to $10.00 is a material difference between the application and the policy issued. It should also be noted that the materially different policy was issued by the company before applicant Hillman had died. This counteroffer not having been accepted by Hillman, there was no meeting of minds and thus no contract of insurance. Ravenscroft v. Kansas City Life Ins. Co., 47 Idaho 425, 276 P. 303 (1929); Riordan v. Equitable Life Assurance Soc., 31 Idaho 657, 175 P. 586 (1918). 1 Couch on Insurance (Anderson, 2d ed. 1959) § 7:20.

Thus, it is my conclusion that the judgment of the trial court should be affirmed.