551 P.2d 623

**P. R. WARDLE and Alice Wardle, husband and wife, Plaintiffs-Appellants,**

v.

**INTERNATIONAL HEALTH & LIFE INSURANCE COMPANY, Defendant-Respondent.**

**No. 11914.**

Supreme Court of Idaho.

June 25, 1976.

---

Karl Jeppesen, of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for plaintiffs-appellants.

John L. King, of King, Wiebe & Morris, Boise, for defendant-respondent.

McFADDEN, Chief Justice.

P. R. Wardle and Alice Wardle, husband and wife, instituted this action to recover from International Health and Life Insurance Company under a health and accident policy for medical expenses resulting from her hospitalization and surgery to repair an atrial septal defect of the heart. The district court, sitting without a jury, concluded that the Wardles' misrepresentation,

omission, and concealment of material facts caused the company to provide coverage which it would not have provided had it known those facts. The court therefore denied recovery to the Wardles who then appealed to this court from the judgment and an order denying their motion for new trial. We reverse the judgment and order a new trial.

Mr. Wardle completed an application for a family health and accident policy with International Health and Life Insurance Company on May 24, 1971, listing Mrs. Wardle as one of his dependents. The written form of the application was drafted so that a "Yes" or a "No" answer could be made by checking an appropriate column next to the question. In the event of a "Yes" answer being given, the form stated:

"If 'yes' to any part of No's 9, 10, or 11, state type of condition, treatment, dates, duration, results, doctors' and hospitals' names and names of person to whom information pertains."

Question no. 9 on the application asked:

"Have you or any dependents named, ever been medically treated for or medically advised for any of the following:

\* \* \* \* \* \*

C. Abnormal blood pressure, heart attack, stroke, or any other heart or circulatory disorder."

Although this question was answered in the affirmative, no reference was made to any aspect of Mrs. Wardle's health.[1] However, uncontroverted testimony at the trial revealed that she had long been aware she had a slight heart murmur and that she had taken medication for high blood pressure. The insurance company issued the Wardles a policy with coverage based on the information given on the application without requiring any physical examination. The policy bore an effective date of May 24, 1971, the application's date, but it was not delivered until later in the year.

Early in 1972, Mrs. Wardle became ill and began consulting doctors. Her condition caused her to be hospitalized in the following months, during which time considerable testing was done. The tests led to the diagnosis of the cause of her condition as an atrial septal defect of the heart. Surgery was performed to repair the defect, which was congenital, and further medical attention was required to complete her recovery.

As a result of this health problem, the Wardles incurred hospital, doctor, and other medical expenses totaling $11,888.45 for her care. The Wardles filed a claim with the insurance company for those medical expenses, but the company denied the claim on the ground that the Wardles failed to disclose in their application Mrs. Wardle's heart murmur and high blood pressure. The Wardles thereafter instituted this action to recover the medical expenses incurred, plus reasonable attorney's fees. The company defended the action on the ground of failure to disclose allegedly material facts about Mrs. Wardle's medical history, and on the ground that the loss arose out of a condition that existed prior to the issuance of the policy. The suit was tried to the court sitting without a jury. The trial court issued its initial memorandum decision, which by stipulation was accepted as its findings of fact and conclusions of law. Judgment was entered in favor of the insurance company and the Wardles moved for a new trial.

Following the filing of a motion for new trial by the Wardles, the trial court issued a second memorandum decision. The second decision and its accompanying findings of fact and conclusions of law concluded that the atrial septal defect was not a preexisting condition capable of diagnosis and that recovery would not be denied on that ground. However, the trial court focused upon the company's other

---

1. The application disclosed Mr. Wardle had previously sustained a "coronary inclusion [sic]."

affirmative defense and made findings of fact which may be summarized as follows:

On the effective date of the policy, Mrs. Wardle had the preexisting conditions of high blood pressure and systolic heart murmur. When the application was made for the policy, Mrs. Wardle was aware of those two conditions and "had in fact been treated for the same by a physician and prescribed medication as treatment therefor." Despite the known existence of those two conditions, Mrs. Wardle's atrial septal defect of the heart was not capable of diagnosis. High blood pressure and a heart murmur are matters that would affect the insurance company's risk and, had the company been advised of the existence of both the high blood pressure and the heart murmur, the company would not have issued the policy in its same form, but would have issued the policy with a rider precluding coverage for Mrs. Wardle's heart condition. The trial court, in its conclusions of law, held that I.C. § 41–1811 precluded the Wardles from recovery because of their misrepresentation, omission, and concealment of material facts. The Wardles appeal from the denial of a new trial and from the judgment in favor of the insurance company.

Whether the Wardles can recover her medical expenses from the insurance company is dependent upon I.C. § 41–1811 which provides:

> "Representations in applications.—All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
> (a) Fraudulent; or
>
> (b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

> (c) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."

Under I.C. § 41–1811, the crucial issue arises from the potential or actual effect that the failure to disclose Mrs. Wardle's heart murmur and high blood pressure had on the insurance company when it wrote the policy. This issue presents two separate questions. The first is whether the wording of the questions propounded in the application required disclosure of the two medical problems. If the form of the application required disclosure of such information, the second inquiry is what effect nondisclosure had on the contract. I.C. § 41–1811(b) and (c).

The first inquiry is whether, under the question proposed, Mrs. Wardle reasonably could be expected to understand that she was required to disclose her knowledge of her history of high blood pressure and heart murmur. An insurance company justifiably seeks information regarding an applicant's health to aid in its decision to provide or limit coverage under a health and accident policy. In the absence of a requirement of a physical examination, a company must rely upon the questions it prepares and directs to an applicant as the means of obtaining the necessary information. Since it frames the application questions, the company must keep them free from misleading interpretations and the consequence of its failure to do so is that all ambiguities in the application will be construed against the insurer. *Purcell v. Washington Fidelity Nat'l Ins. Co.*, 141 Or. 98, 16 P.2d 639 (1932). An applicant, correspondingly, must act in good faith to truthfully answer direct questions that call for information whithin the applicant's knowl-

edge. *Brinkoetter v. Pyramid Life Ins. Co.,* 377 S.W.2d 560 (Mo.App.1964); *Leigh v. Consumers Nat'l Life Ins. Co.,* 240 Or. 290, 401 P.2d 46 (1965); *Purcel v. Washington Fidelity Nat'l Ins. Co., supra.* When responding to general questions about medical history, however, an applicant is not required to list every physical indisposition that the applicant ever has experienced. *Dean v. Nationwide Life Ins. Co.,* 96 Idaho 772, 536 P.2d 1122 (1975).

The application's question regarding high blood pressure was specific and direct, requiring Mrs. Wardle to recite the facts she knew about that aspect of her medical history. The application asked unambiguously: "Have you * * * ever been medically treated for or medically advised for * * * [a]bnormal blood pressure * * *." The uncontroverted testimony of Mrs. Wardle and her doctors at the trial demonstrates her awareness that she was diagnosed as having abnormally high blood pressure seven months before the insurance application was answered, and that she had been taking medication to control her blood pressure during that period. In justification for this nondisclosure, Mrs. Wardle urges that she was not taking medication at the very time of the application in May, 1971. The question does not ask whether the applicant is being treated for abnormal blood pressure at the time of the application; it instead askes if she has "ever been medically treated for or medically advised for * * * [a]bnormal blood pressure." Because of the direct and specific nature of the application's question regarding abnormal blood pressure, the company reasonably could expect disclosure of the information that Mrs. Wardle had about the diagnosis and medication for her high blood pressure condition.

On the other hand, the application did not address to the applicant a direct and specific question regarding a heart murmur. Instead, the question asked generally: "Have you * * * ever been been medically treated for or medically advised for * * * any other heart or circulatory dis-

order." No evidence is present in the record to support the trial court's finding that Mrs. Wardle received any medical treatment for her heart murmur. Therefore, if this question required Mrs. Wardle to disclose the heart murmur, that requirement had to arise from that portion of the question whether she had "ever been * * * medically advised for * * * any other heart or circulatory disorder." It is this court's conclusion that Mrs. Wardle reasonably could not be expected to understand that such a question required her to mention the heart murmur.

The first reason is the limitation that the company put on its question by its choice of words. The question asked whether Mrs. Wardle has been "advised for" any other heart or circulatory disorder; it does not ask whether she merely has been "advised of" any other such disorder. The difference between "of" and "for" creates a difference in what the question asked Mrs. Wardle and in what she was required to disclose in response. To be "advised for" a disorder denotes the receipt of a recommended course of conduct in response to the disorder. The evidence in the record is devoid of any medical advice suggesting that Mrs. Wardle should follow a particular course of action in response to her heart murmur. To be "advised of" a disorder denotes the receipt of the knowledge that such a condition exists. Mrs. Wardle undeniably had been "advised of" her slight heart murmur as early as 1946 and at other times subsequently, but the application did not ask her whether she had been advised of a heart disorder. The company's question concerning medical advice for a heart disorder did not require Mrs. Wardle to disclose her heart murmur because she merely had been advised of it.

In addition to the difference between "advised for" and "advised of," the general phrase "any other heart or circulatory disorder" introduces an ambiguity into the question. That phrase, upon which the company must rely to secure informa-

tion about Mrs. Wardle's heart murmur, does not exhibit the specificity apparent in the particular conditions inquired about earlier in the same question, i. e., abnormal blood pressure, heart attack, and stroke. The ambiguous, general inquiry about a "disorder" requires an applicant to determine what constitutes a disorder and then to decide whether she has any health condition that falls within such a definition. To determine whether Mrs. Wardle should have regarded her slight heart murmur as a "heart disorder," the court applies the objective standard that an ambiguous question in an insurance application is to be interpreted as an ordinary person standing in the position of the insured reasonably would have interpreted it. *MFA Mutual Ins. Co. v. Lusby,* 295 F.Supp. 660 (W.D. Va.1969); *Continental Casualty Co. v. Mulligan,* 10 Ariz.App. 491, 460 P.2d 27 (1969); 7 Couch, Insurance 2d § 35:145. *See also Abbie Uriguen Oldsmobile Buick Inc. v. United States Fire Ins. Co.,* 95 Idaho 501, 511 P.2d 783 (1973); *Dunford v. United of Omaha,* 95 Idaho 282, 506 P.2d 1355 (1973); *Sheilds v. Hiram C. Gardner, Inc.,* 92 Idaho 423, 444 P.2d 38 (1968).

We conclude that an ordinary person standing in the position of Mrs. Wardle reasonably would have concluded that her slight heart murmur did not constitute a "heart or circulatory disorder." Thus there was not an omission of fact required to be disclosed by the application. The uncontroverted testimony of Mrs. Wardle and her doctors demonstrates that she first learned of her heart murmur in 1946, that she was again advised of its existence in 1956, and that she discussed its existence with her doctor in 1970, seven months before the Wardles completed the insurance application. The record is devoid of any evidence that during those 24 years any physician advised her that the heart murmur constituted a "heart disorder" or advised her for any action or medication in response to the murmur. Moreover, the physicians who testified at the trial agreed that Mrs. Wardle's heart murmur ranked

at the second grade of a six-grade scale, on which the sixth grade comprises the loudest murmur. See *Dean v. Nationwide Life Ins. Co.,* 96 Idaho 772, 536 P.2d 1122 (1975).

In summary, it is the conclusion of this court that the question in the application required Mrs. Wardle to advise the company about her high blood pressure, but not about her heart murmur. The nondisclosure of the heart murmur therefore does not constitute a misrepresentation, omission, concealment of facts, or incorrect statement within the meaning of I.C. § 41–1811. On the other hand, the nondisclosure of her high blood pressure was a misrepresentation, omission, concealment of facts, or incorrect statement within the meaning of I.C. § 41–1811.

■ ■ As previously pointed out, the trial court found that when the insurance application was executed, Mrs. Wardle was aware of the existence of her high blood pressure and her heart murmur; the court also found;

> "That high blood pressure and heart murmur are matters which would affect the Defendant insurance company's risk."

> "That if the Defendant insurance company had been advised in Plaintiff's application for insurance of the existence of the high blood pressure and heart murmur, Defendant insurance company would not have issued the policy in its same form, but would have issued the policy with a rider precluding coverage for Mrs. Wardle's heart condition."

The trial court first correctly concluded that under I.C. § 41–1811, misrepresentations, omissions, concealment of facts, or incorrect statements in an application of insurance do not prevent recovery under the policy unless they are material either to the acceptance of the risk, or to the hazard resulting in the loss. The trial court then concluded:

> "That, since Mrs. Wardle's high blood pressure and heart murmur were ma-

terial to the Defendant insurance company's acceptance of the risk, and further since the Defendant insurance company would not have provided the coverage with respect to the hazard resulting in the loss, Plaintiffs should be precluded recovery for misrepresentation, omission and concealment of material facts in their application for insurance under Section 41–1811, Idaho Code.

In this conclusion the trial court erred because it is based in part on the erroneous finding that Mrs. Wardle was required to disclose information about her heart murmur. For that reason, the judgment in this case must be reversed.

The trial court did not enter any finding of fact or conclusion of law concerning whether Mrs. Wardle's high blood pressure alone was material to the company's acceptance of the risk or whether the company would have put a rider on the policy if it had known of the high blood pressure alone. Moreover, the record does not establish the company policy concerning the extent of coverage when an applicant discloses high blood pressure. We therefore cannot conclude whether the nondisclosure of Mrs. Wardle's history of high blood pressure alone would preclude recovery under I.C. § 41–1811.

It is also the conclusion of this court that the trial court erred in not granting appellants' motion for new trial for the reasons previously discussed and the reasons hereinafter expressed.

■ The trial court's findings of fact and conclusions of law leave another issue unresolved. Mrs. Wardle testified to the effect that she told the company agent who filled out the application that she had been advised about her heart murmur years before; her testimony is to the further ef-

fect that the agent replied that the company was interested in information pertaining to the five years previous to the application and to all medical reports. She further testified to the effect that she was sure she told the agent about having had high blood pressure, but that she did not tell the agent about having taken medication because, at the time of the application she was not taking any, her blood pressure being normal. The agent testified to the effect that he possibly was advised of these conditions, but that he really could not remember. The trial court should make findings of fact and conclusions of law on this issue. The court should determine whether the agent had the information in question and did not forward it on the application to the company. An affirmative finding on that issue would be a bar to the company's affirmative defense of failure of disclosure under I.C. § 41–1811. *Industrial Indemnity Co. v. United States Fidelity and Guaranty Co.,* 93 Idaho 59, 454 P.2d 956 (1969); *Turner v. Pacific Mutual Life Ins. Co.,* 52 Idaho 672, 20 P.2d 210 (1933); *Rasicot v. Royal Neighbors of America,* 18 Idaho 85, 108 P. 1048 (1910). Annot., 26 A.L.R.3d 6 (1969).

The appellants also moved for allowance of an attorney's fee under I.C. § 41–1839. This motion is premature at this time. However, should the appellants prevail on retrial, the trial court shall consider the issue of attorney's fees and may, in its discretion, consider the services of appellants' counsel on this appeal.

The judgment of the trial court is reversed, and a new trial ordered. Costs to appellants.

DONALDSON, SHEPARD, and BAKES, JJ., and SCOGGIN, District Judge (Retired), concur.