697 P.2d 1206

**Larry PERMANN, Plaintiff-Appellant,**

**v.**

**NATIONWIDE INSURANCE COMPANY, Defendant-Respondent.**

**No. 14624.**

Court of Appeals of Idaho.

March 25, 1985.

Petition for Review Denied
June 19, 1985.

Kenneth E. Lyon, Jr. and Craig R. Jorgensen, Pocatello, for plaintiff-appellant.

Stephen S. Dunn of Merrill & Merrill, Pocatello, for defendant-respondent.

SWANSTROM, Judge.

Larry Permann, plaintiff-appellant, seeks recovery from defendant Nationwide Insurance Company on a health insurance policy under the doctrine of temporary insurance. On appeal Permann questions whether the trial court's finding that a temporary contract of insurance did not arise between Permann and Nationwide is supported by substantial and competent evidence. We affirm.

On November 8, 1978 Larry and Sharon Permann applied with Nationwide Insurance to renew health insurance coverage for themselves and their son and daughter. They had let their previous policy with Nationwide lapse for financial reasons the spring before. The proper application was completed, showing the "desired insurance effective date" as November 8, 1978—the date of application. The agent then gave the Permanns an official receipt in exchange for a two-month prorated premium.

On December 8, 1978 Nationwide sent a letter to Larry Permann. It stated: "Before we can reach a decision [on your application], we would like to have a current medical examination of you." The Permanns made an appointment with a doctor for Mr. Permann to have a medical examination on January 2, 1979. However, fate intervened and one day before the appointment Mr. Permann was stricken with viral encephalitis. He eventually recovered, but surgery was required and he was hospitalized for over thirty days.

On January 15, 1979, during Mr. Permann's illness, Nationwide again asked that the additional medical information requested in the December 8 letter be sent to them by January 29, otherwise the file would be closed. The requested information was received by Nationwide on January 24.

On February 6 Nationwide issued a revised policy insuring only Mrs. Permann and the son but excluding coverage for Mr. Permann and their daughter. Nationwide rejected coverage on Mr. Permann because it was not satisfied with the medical information it had received. The revised policy was rejected by the Permanns and the premium was later returned to them in April.

Mr. Permann sued for payment of medical expenses caused by the viral encephalitis. A trial without a jury was held in December of 1981. After the court issued a memorandum opinion along with findings of fact and conclusions of law, judgment was entered for Nationwide. Permann appeals.

■ Our standard of review, from a nonjury trial, is limited to reviewing the factual findings made by the district court in the light most favorable to the respondent. *Higginson v. Westergard*, 100 Idaho 687, 604 P.2d 51 (1979). This standard gives due regard to the special opportunity of the trial court to judge the credibility of witnesses and to weigh conflicting evidence. *Javernick v. Smith*, 101 Idaho 104, 609 P.2d 171 (1980); *Higginson v. Westergard, supra.*

## TEMPORARY INSURANCE

■ Permann seeks recovery on his insurance policy under the doctrine of temporary insurance. Idaho has held that temporary insurance exists from the date of application if there is unequal bargaining power between the two parties; complex legalistic or ambiguous phrasing is used throughout the contract; and, the insurance company uses a device known as the "conditional premium receipt." *Toevs v. Western Farm Bureau Life Insurance Company*, 94 Idaho 151, 483 P.2d 682 (1971); *Dunford v. United of Omaha*, 95 Idaho 282, 506 P.2d 1355 (1973). Permann contends the language in the official re-

ceipt contradicts the "effective date" of the "desired insurance" as shown in the application and therefore creates an ambiguity. Permann correctly argues that special rules of construction dictate that insurance policies are to be construed most liberally in favor of recovery, with all ambiguities being resolved in favor of the insured. *Foremost Insurance Company v. Putzier*, 102 Idaho 138, 627 P.2d 317 (1981). In the case of ambiguously written insurance policies, an objective standard should be applied to effectuate the intent of the parties. The test is "what a reasonable person in the position of the insured would have understood the language of the contract to mean." *Id.* at 142, 627 P.2d at 321. This standard is in accord with the general rule of construing all ambiguous insurance contracts against those who write them. *Dunford v. United of Omaha, supra.*

▮ The dispute between the parties centers on the effective date of insurance coverage. The Permanns' application for insurance had a space for the "desired insurance effective date" where the figures "11–8–78" were written in by the agent. The official receipt given to Mr. Permann stated: "Any insurance applied for shall become effective on the first day of the month following acceptance by the insurance company of the member's request for coverage and receipt of the first full premium." The Permanns contend that the referred to date in the application renders the contract ambiguous.

At trial, the Permanns testified they believed they were covered by insurance the day they paid their first premium. They were under the impression that the application was only to renew their former insurance policy, since that policy had lapsed. In addition, they said the agents represented that any physical required would be a "mere formality" to coverage. The insurance agents who sold the policy had a much different version of the transpired events. They testified the Permanns were told this was not a renewal of their previous policy. They testified that they clearly explained there would be no coverage until the application was accepted by the home office. The trial judge did not make a finding to resolve this conflicting evidence. Nor did he find or conclude whether or not the documents were ambiguous as to the effective date of coverage. Instead, he made a finding that if there were any ambiguity which caused the Permanns to believe they were covered by the policy as of the day they paid the initial premium, that belief was dispelled when the letter of December 8 was received. That finding is supported by the evidence and we can uphold it. Apparently, the trial judge then concluded that the notice given by the letter was sufficient to terminate any temporary insurance contract before Mr. Permann became ill. We do not examine the validity of this conclusion, rather, we prefer to base our decision on the question of ambiguity. Whether the documents are ambiguous is a question of law. On appeal we make our own independent determination of the question.

We decide that the application and the official receipt are not ambiguous. The box on the application showing "desired insurance effective date is: 11–8–78" does not make the documents ambiguous so as to mislead a reasonable person into a belief that there was coverage when the premium was paid. The application itself also contained boxes by which the "home office" could denote "complete acceptance" or "complete rejection" or accept the application with riders, exclusions or reduced benefits. More importantly, on both sides of the application, immediately above the signature line, was the following statement: "NOTE: The Insurance Company intends to rely on the above information as a basis for consideration of this application." Thus, the language on the application itself indicates that the insurance company— meaning the "home office", not the agents—would consider the application and make the decision to accept or reject it. It is reasonably clear that the application must first be accepted by the insurance company before the policy will go into effect.

The "official receipt" given to the Permanns gives an even clearer signal that payment of the premium is not sufficient to put the policy into effect. As noted, the receipt states in large type that "Any insurance applied for shall become effective on the first day of the month following acceptance by the insurance company of the member's request for coverage and receipt of the first full premium." The receipt also plainly states: "If the insurance company declines to accept the member's request for coverage, or if an alternative plan of insurance is offered which the member refuses to accept, the sole liability of the insurance company shall be to refund the amount stated in this receipt upon surrender of this receipt." In our view neither the application nor the receipt would cause a reasonable person to believe that there would be insurance coverage *before* the application was accepted by the insurance company. In this respect the documents are not ambiguous. Therefore, the criteria set forth in *Toevs v. Western Farm Bureau Life Insurance Company, supra,* for creation of a temporary insurance contract are not met in this case. Accordingly, we must affirm the judgment.

Costs to respondent, Nationwide. No attorney fees awarded.

WALTERS, C.J., concurs.

BURNETT, Judge, dissenting.

The doctrine of "temporary insurance" is a judicial response to the practice, followed by some insurance companies, of collecting an advance premium from an insurance applicant while shrouding in ambiguity the effective date of coverage. Were it not for the doctrine of "temporary insurance," an insurance company might delay or backdate coverage as it sees fit—avoiding liability if a loss occurs soon after the application, or retaining the premium for a risk-free period if no such loss occurs. This practice has been vigorously condemned. *Toevs v. Western Farm Bureau Life Insurance Co.,* 94 Idaho 151, 483 P.2d 682 (1971).

The Court today refuses to apply the doctrine of "temporary insurance" because, in the majority's view, there was no ambiguity as to the effective date of coverage. I respectfully disagree. The application documents conveyed inconsistent messages to a prospective insured. One message, conveyed by the premium receipt and impliedly echoed by the application form, was that coverage would not begin until "the first day of the month following acceptance by the insurance company...." For the purpose of this discussion, I concede that a reasonable person would understand this language to mean not merely a physical "acceptance" of the application form and of the premium payment but "acceptance" of the insurance risk presented by the application. A second message was conveyed by the section of the application form calling for insertion of a "desired insurance effective date." An agent completed this section by inserting "11–8–78"—the date when the application was taken and the premium was collected. I believe a reasonable person could have inferred that coverage began on that date. These conflicting messages produced an ambiguity.

The Court avoids this ambiguity by deeming the second message—that coverage began on "11–8–78"—to be unreasonable. The first impulse of lawyers and judges, schooled in the discipline of reading a document as a whole and giving a coherent meaning to all of its parts, is to reconcile any conflict. Thus, taken together, the two messages might be interpreted to mean that a "desired insurance effective date" could be specified, subject to the company's dominant right to reject the insurance risk. That, in essence, is what the majority says today. But we must remember that the test of reasonableness is not what lawyers or judges would understand; rather, it is "what a reasonable person in the position of the insured would have understood...." *Foremost Insurance Co. v. Putzier,* 102 Idaho 138, 142, 627 P.2d 317, 321 (1981). In this case the insurance agent could have completed the "desired insurance effective date" section of the application form by inserting a phrase such

as "upon acceptance." Had he done so, a reasonable person in the position of the prospective insured clearly would have understood that coverage would not become effective until a future time. But the agent did not do so. Rather, he inserted a particular date and he chose the date when the premium was paid. I think a prospective insured reasonably could ascribe significance to this choice.

Of course, a reasonable person's understanding also might be influenced by contemporaneous oral communications from the agent. However, in this case the evidence concerning such statements is conflicting. As the majority opinion notes, the district judge did not undertake to determine who actually said what to whom when the insurance application form was completed. Consequently, I would remand the case for a finding as to whether the insurance agent provided a clear explanation of when coverage would commence and thus cured the ambiguity in the application documents.

Because I would remand the case, I am obliged to address the district judge's ruling that even if an ambiguity existed, it was later resolved by the letter of December 8, 1978. In that letter, as the reader will recall, the company asked for a current medical examination. The question posed by the district judge's ruling is whether an ambiguity in documents allegedly comprising a contract may be removed by one party's subsequent, unilateral statement of its perceived rights. I believe not. It appears well settled, as a general rule, that subsequent conduct or communication may be considered in resolving an ambiguity if, but only if, it reflects an understanding shared by the parties. *See cases collected in* 17 AM.JUR.2d *Contracts* § 274, at 687 (1964). A limited extension of this general rule is recognized where a party, by his unilateral conduct, acknowledges the existence or legality of a contract obligation that he later disavows. *E.g., Spinoso v. Rio Ranches Estates, Inc.,* 96 N.M. 5, 626 P.2d 1307 (1981); *Equitable Loan & Security Co. v. Waring,* 117 Ga. 599, 44 S.E. 320 (1903).

The present case falls outside both the general rule and the limited extension. The December 8 letter expresses, at most, the insurance company's own view—not a shared view—that no risk had been assumed on the insurance application. Moreover, the mere fact that the prospective insured later made an appointment for a medical examination cannot be viewed as an acknowledgement that no insurance coverage existed. The doctrine of "temporary insurance" would be reduced to a meaningless fiction if coverage were defeated merely by a prospective insured's cooperative efforts to satisfy an insurance company's demands before receiving a permanent insurance policy.

The "temporary insurance" doctrine is a rigorous one, but insurance companies are not its helpless victims. The doctrine does not apply if the effective date of coverage is made clear to a prospective insured and premiums are collected only for periods of genuine risk. However, if a company provides ambiguous information regarding the effective date and collects a premium without assuming risk, the doctrine can and should be applied.