859 F.2d 154
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 French E. LEWIS, Plaintiff-Appellant-Cross-Appellee,
v.
KANSAS CITY LIFE INSURANCE COMPANY, a Missouri corporation,
Defendant-Appellee.
KANSAS CITY LIFE INSURANCE COMPANY, Third-Party-Plaintiff,
v.
Lynda Miller RENSHAW, Third-Party-Defendant.
 Nos. 87-3611, 87-3621.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 14, 1988.
Decided Sept. 16, 1988.
 Before EUGENE A. WRIGHT, WALLACE and HUG, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We must decide whether life insurance offered by Kansas City Life Insurance Company was in effect at the time of Luther Card's death. The district court concluded that it was not. Affirmed.
 
 
 3
 In December 1983, insurance agent Lynda Miller Renshaw submitted to Kansas City Life an application for $50,000 of life insurance on Mr. Card. The application named as beneficiary French Lewis, Mr. Card's brother and Renshaw's father. A check for $1,835 accompanied the application.
 
 
 4
 The application stated that coverage would not take effect until the policy was delivered to the applicant. Applicants could obtain limited coverage while the application was pending by submitting a Temporary Insurance Agreement (TIA) and an advance premium payment. Renshaw did not submit a TIA with the application.
 
 
 5
 At some interval she completed the TIA using information obtained during a conversation with Mr. Card and she claimed to have obtained his signature.[1] It was dated December 14, 1983. Although Mr. Card had been treated in May 1983 for a basal cell carcinoma, a form of skin cancer, the TIA contained a negative response to the question of whether he had been treated for cancer within the past two years.
 
 
 6
 During a medical examination on December 12, requested by Kansas City Life, Mr. Card completed a health questionnaire. He indicated that "skin cancer" on the right temple had been removed by surgery.
 
 
 7
 Mr. Card died on January 3, 1984 of a massive myocardial infarction and cardiogenic shock. His examining physician opined that the minor cancer surgery had positively and unequivocally no bearing on Mr. Card's death.
 
 
 8
 The next day Kansas City Life requested the TIA from Renshaw and advised her of a premium deficiency. Several days later Renshaw called William Young, a general agent for Kansas City Life, and informed him of Mr. Card's death. Young stated by affidavit that he then called the insurance company's main office and was told that Mr. Card had been approved for coverage. He stated also that he was advised to submit a claim because the policy had been approved.
 
 
 9
 Near the end of January, Kansas City Life denied coverage under the application for insurance and the TIA. It claimed that conditions for coverage had not been met.
 
 
 10
 French sued in Idaho state court. Kansas City Life removed and filed a third party complaint against Renshaw for indemnification. On cross-motions for summary judgment, the district court ruled that the insurer was not obligated to provide coverage pursuant to the application or the TIA.
 
 ANALYSIS
 A. Coverage Pursuant to the Application
 The application for insurance provides:
 
 11
 The policy and insurance applied for will take effect when the policy is delivered to the Applicant and the first premium is paid in cash while the health of the Proposed Insured(s) remains as stated in this application and during their lifetime; the only exception to this is provided in the Temporary Insurance Agreement if the agreement has been issued and the advance payment required by the agreement has been made.
 
 
 12
 Application for Insurance Sec. 16(3) (emphasis added). The district court ruled that coverage pursuant to the application had not become effective because the parties conceded that the policy had not been issued. It is undisputed that it had not been delivered. By express terms of the application, coverage under the pending policy was not effective at the time of death. The court ruled correctly.
 
 
 13
 Lewis contends also that there was a ratification by the telephone call from Young to the insurer. At best, this was a statement of company approval of the insurance application. That is different from the issue of when the policy is effective which is determined by the delivery of the policy to Card.
 
 
 14
 We address briefly two arguments that seem to lurk in Lewis's brief, that Kansas City Life is estopped from denying coverage or it waived delivery of the policy because it conceded coverage in the telephone call with Mr. Young. Both doctrines are fact-intensive and generally not suitable for disposition on summary judgment. But to invoke either doctrine, Lewis must establish that Card relied detrimentally on the alleged representation of coverage. See Clearwater Minerals Corp. v. Presnell, 111 Idaho 945, 729 P.2d 420, 424 (Idaho Ct.App.1986) (waiver); Brand S Corp. v. King, 102 Idaho 731, 639 P.2d 429, 432 (1981) (estoppel); see also Idaho Code Sec. 41-1832.
 
 
 15
 Nothing in the record could support a finding of detrimental reliance. The representation was alleged to have been made after Mr. Card's death. At that time Card would have been unable to obtain alternate coverage under the TIA or with another insurer. There is no basis in the record for applying either doctrine.
 
 B. Doctrine of Temporary Insurance
 
 16
 Lewis argues that Kansas City Life was obligated to provide insurance coverage immediately when it accepted Mr. Card's premium payment. He contends that Mr. Card complied with all requests from the insurance company and that Renshaw failed to explain that tendering payment was not sufficient to provide immediate coverage.
 
 
 17
 Acceptance of a premium payment when coupled with other circumstances may obligate an insurer to provide coverage for losses occurring while the application is pending. See Toevs v. Western Farm Bureau Life Ins. Co., 94 Idaho 151, 483 P.2d 682 (1971). In Toevs, the Idaho Supreme Court adopted the doctrine of temporary insurance to prevent insurance companies from denying coverage unfairly when they created circumstances that would lead reasonable people to believe they were covered. The court relied on several factors to justify the doctrine: (1) the insurance agent did not explain the effective date of the insurance; (2) language in the application referring to the effective date was complex, legalistic, and ambiguous; (3) and the insurer accepted premium payments conditioned on approval of the application. See 483 P.2d at 685-86.
 
 
 18
 As we understand the doctrine, if the insurer accepts advance premium payments, creates uncertainty as to the effective date by ambiguous language in the application, and uses a "conditional premium receipt," the law implies a contract of temporary insurance that is effective until the insurer notifies the applicant of acceptance or rejection. See Permann v. Nationwide Ins. Co., 108 Idaho 192, 697 P.2d 1206, 1207 (Idaho Ct.App.1985); Dunford v. United of Omaha, 95 Idaho 282, 506 P.2d 1355, 1358 (1973) (temporary insurance continues in force until applicant notified of rejection). Mere acceptance of payment and failure to explain the effective date, however, have not been sufficient to invoke the doctrine except where the applicant was not provided with a written explanation of terms. See Foremost Ins. Co. v. Putzier, 102 Idaho 138, 627 P.2d 317, 322 (1981).
 
 
 19
 The application and TIA explained the terms of coverage. We conclude as a matter of law that the language referring to effective date is unambiguous. See Permann, 697 P.2d at 1208 (ambiguity is a question of law). It makes clear that the insurance will not take effect until the policy is delivered to the applicant, except as provided in the TIA. Nothing in the application contradicts that information. The temporary insurance agreement provided that interim coverage will take effect on the date of the temporary agreement, but in bold type indicated that no coverage will be provided if the applicant answered yes to either of the health questions.
 
 
 20
 There is a conspicuous and refreshing absence of legalese in both documents. The language is plain. There should be no doubt that an applicant is not covered until the policy is delivered, unless qualified for interim coverage under the TIA. The principal rationale for the rule, ambiguity as to effective date, is not present here.
 
 
 21
 Absent also is the use of a conditional premium receipt. The potential unfairness of accepting an applicant's payment without providing coverage is not present. Kansas City Life provided express interim coverage if the applicant met health qualifications and tendered the advance payment.
 
 
 22
 The fact that Kansas City Life accepted payment although Mr. Card was not qualified for temporary insurance does not justify application of the doctrine. Had Mr. Card indicated his prior bout with skin cancer, he would have realized that interim coverage was not available.
 
 C. Temporary Insurance Agreement
 
 23
 Lewis argues that he is entitled to insurance benefits under the TIA. The court concluded that Mr. Card's answer to the cancer inquiry was a material misrepresentation and precluded coverage.
 
 
 24
 A misrepresentation of fact by an applicant is material and sufficient to avoid an insurer's obligations if it induces the insurer to assume a risk which it otherwise would not. See Charlton v. Wakimoto, 70 Idaho 276, 216 P.2d 370, 372 (1950). The TIA provides also that a material misrepresentation will invalidate the agreement.
 
 
 25
 Two inquiries are required for evaluating an insurer's claim of material misrepresentation: 1) Did the applicant make a misrepresentation; and 2) was it material? See Wardle v. Int'l Health & Life Ins. Co., 97 Idaho 668, 551 P.2d 623, 626 (1976).
 
 1. Misrepresentation
 
 26
 The failure to disclose information is a misrepresentation if the wording of the question is such that the applicant could reasonably have been expected to understand that disclosure was required. See Wardle, 551 P.2d at 626.
 
 
 27
 The TIA posed just two questions regarding the applicant's health. The critical one stated:
 
 
 28
 Has (have) the person(s) listed above as proposed insured(s):
 
 
 29
 2. within the past two years been treated for heart trouble, stroke, or cancer, or had such treatment recommended by a physician or other medical practitioner;
 
 
 30
 If either of the above questions is answered "yes" or left blank, no agent of Kansas City Life Insurance Company is authorized to accept money and no insurance will take affect under this agreement.
 
 
 31
 Both health questions on the TIA dated December 14 were marked "no." The district court ruled that the word "cancer" is not ambiguous, and that Mr. Card was required to answer "yes" to the second question. Lewis argues that Mr. Card was not obligated to disclose treatment for skin cancer because the term "cancer," as used in the TIA, is ambiguous. He argues that the court erred by deciding, as a matter of law, that the negative response was a misrepresentation.
 
 
 32
 Idaho courts vest responsibility with the fact-finder for determining whether a response is a misrepresentation. Dean v. Nationwide Life Ins. Co., 96 Idaho 772, 536 P.2d 1122, 1125 (1975). Federal courts, of course, are not bound by state law when allocating responsibility between the court and fact-finder. See Deland v. Old Republic Life Ins. Co., 758 F.2d 1331, 1335 (9th Cir.1985). We need not decide if the question is one for the fact-finder because the record is insufficient to create a disputed issue of fact. See Fed.R.Civ.P. 56(c).
 
 
 33
 The record does not reflect an ambiguity. It indicates that Mr. Card wrote on the medical questionnaire "skin cancer on R. temple removed by surgery" in response to a question about prior diagnoses for "tumor or cancer." He wrote also "skin cancer surgery complete removal" as the reason for his most recent visit to a physician.
 
 
 34
 Lewis's argument that "skin cancer is fairly common, and individuals simply to do not associate it with the ordinary meaning of 'cancer,' " is not availing. Mr. Card associated his condition with "cancer" on the health questionnaire. There is no reason for him not to have made the same association two days later on the TIA. Under these circumstances, it is reasonable to have expected him to understand that the TIA's inquiry required disclosure of the cancer. The negative response was a misrepresentation.
 
 2. Materiality
 
 35
 The court ruled that the negative response was material. Lewis argues that it was not because Kansas City Life knew of the cancer at the time it evaluated the insurance application, that it decided to offer coverage despite knowledge of the cancer, and that the cancer was in no way connected with Mr. Card's death. He argues also that the court erred by deciding the question of materiality.
 
 
 36
 The question of materiality is reserved generally for the trier of fact. See Matthews v. New York Life Ins. Co., 92 Idaho 372, 377, 443 P.2d 456, 461 (1986). But the absence of a legitimate factual dispute makes it appropriate to decide the question as a matter of law on summary judgment. See Fed.R.Civ.P. 56(c).
 
 
 37
 Lewis relies heavily on the argument that the negative response was not material because Kansas City Life decided to insure Mr. Card despite its knowledge of the cancer. But the question of coverage under the application is not now at issue. The court decided that question on the failure to meet an express condition of the application, not on a material misrepresentation.
 
 
 38
 The question of materiality is relevant only to the validity of the TIA. A misrepresentation is material if it induces an insurer to provide coverage when it otherwise would not. See Wakimoto, 216 P.2d at 372. By statute, Idaho limits the effect of misrepresentations:
 
 
 39
 Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
 
 
 40
 * * *
 
 
 41
 * * *
 
 
 42
 (b) material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
 
 
 43
 (c) the insurer in good faith would either not have issued the policy or contract, ... or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.
 
 
 44
 Idaho Code Sec. 41-1811.
 
 
 45
 We conclude, as a matter of law, that the negative response was a material misrepresentation. The TIA states expressly that "no insurance will take effect under this agreement" unless the applicant answers both questions affirmatively. Because the TIA provides immediate interim coverage, Kansas City Life does not have the opportunity to evaluate risks individually. It has determined that applicants who meet the medical qualifications are acceptable risks, and it provides coverage without further evaluation. Those who do not are unacceptable and will not be covered. It depends solely on accurate responses to the health questions to identify acceptable and unacceptable risks.
 
 
 46
 By express terms of the TIA, Kansas City Life will not accept the risk of interim coverage unless the applicant meets the health qualifications. The TIA provides that those conditions cannot be waived. A false negative answer to either health question would induce Kansas City Life to provide interim coverage when it clearly would not otherwise. The misrepresentation here falls within subsections (b) and (c) of section 1811. The failure to answer the health questions accurately is a material misrepresentation and a sufficient ground to avoid coverage.
 
 
 47
 Lewis asserts two waiver arguments: (1) Kansas City Life waived the requirement that the applicant be free from cancer because it requested the TIA even after it learned of his cancer; and (2) it waived two provisions of its Agent's Manual by accepting payment with the TIA. Kansas City Life requested the TIA after Mr. Card's death.
 
 
 48
 Nothing in the record suggests that Lewis relied on that request. That alone is sufficient to reject the waiver argument. We also point out that the TIA states explicitly: "No one is authorized to waive or modify any provision of this agreement." Proof that Kansas City Life had waived provisions of its Agent's Manual would not entitle Lewis to relief. Those provisions do not stand in the way of coverage; it is the conditions of coverage requiring freedom from cancer.
 
 
 49
 We summarily reject the argument based on Industrial Indemnity Co. v. United States Fidelity and Guaranty Co., 93 Idaho 59, 454 P.2d 956 (1969). There was never any coverage to rescind; the TIA had not been submitted and the policy had not been delivered.
 
 CONCLUSION
 
 50
 Mr. Card's death occurred at a time when unfortunately the insurance he had applied for was not in effect. The circumstances here are not appropriate for application of the temporary insurance doctrine, and the negative response in the TIA was a material misrepresentation sufficient to render coverage ineffective. The judgment is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Kansas City Life alleges that the signature is a forgery. The district court ruled that this factual allegation was inappropriate for summary judgment. Because its ruling and our conclusions are based on other grounds, it is not necessary to consider this claim