[No. 39282.     Department Two.     May 8, 1969.]

ROBERT L. RAMSEY *et al., Respondents and Cross-appellants,* v. PETER SEDLAR *et al., Appellants,* ROLAND & ROLAND, INC., *Respondent.*\*

\*Reported in 454 P.2d 416.

R. *Wayne Cyphers,* for appellants.

*Richard E. Schultheis* (of *Schultheis, Maddock & H. G. Sutton*), for respondents and cross-appellants.

HAMILTON, J.—Respondents, as purchasers under a contract for the sale of real property, instituted this action seeking to specifically enforce the contract upon the grounds that the contract price had been fully paid. Appellants, the sellers, denied payment in full and counterclaimed for the contract balance allegedly due and for damages arising out of asserted fraud and breach of fiduciary duty. After trial to the court sitting without a jury, appellants were ordered to execute a deed to respondents in full compliance with the contract of sale; however, appellants were granted judgment in the sum of $2,300 against respondent Robert Roland and his brother, Howard Roland, and their real-estate brokerage firm of Roland & Roland, Inc., representing the brokerage commission on the sale of the land involved. Appellants have appealed from the judgment of specific enforcement and respondents have cross-appealed from the judgment forfeiting the brokerage commission.

Appellants are Peter and Margaret Sedlar, husband and wife, who owned an 80-acre tract of land, the sale and purchase of which gave rise to this action. Respondents are Robert and Howard Roland, and Roland & Roland, Inc.,[1] as brokers for the sale of appellants' property, and Robert L. Ramsey, Kelton J. Butler, Monroe H. Pastermack, and Robert Roland on behalf of his brother and their brokerage business, as members of the joint venture formed to purchase appellants' property.

We shall outline briefly the circumstances giving rise to this suit.

The appellants have limited educations. In addition, appellant Peter Sedlar does not have a good command of the

---

[1]The corporation and Howard Roland were added as parties to the judgment by stipulation and motion at the close of the trial.

English language either as it is written or spoken. The trial court also found that neither of the appellants have much knowledge of business generally or the sale and purchase of real property in particular, although they had initially purchased the property involved on an installment contract, had operated and maintained a commercial sawmill and timber business on the premises, engaged in commercial fishing ventures, compiled and computed their federal income tax returns without professional assistance, and maintained until retirement appellant Peter Sedlar's status as a first-class journeyman machinist under civil service in the Puget Sound Naval Shipyard.

On May 11, 1961, appellants, as defendants in a malicious prosecution action brought by one of their neighbors, incurred a judgment against them in the sum of $2,000 plus costs, and, being without ready cash to pay the judgment and being otherwise dissatisfied with their neighborhood, decided to sell their property. On May 12, the day after the entry of the judgment, a salesman from Roland & Roland, Inc., who was acquainted with appellants and their situation, approached them to obtain a listing on their property. Appellants then signed a 5-day listing agreement providing for a sales price of $27,000 for their 80-acre tract, plus $2,100 for equipment situated on the tract.

Two days after the listing agreement expired, respondent Robert Roland presented an earnest-money agreement constituting an offer to appellants to purchase their listed real and personal property for a total price of $23,000, payable $7,500 down and $150 per month with deferred balances bearing 6 per cent interest. This agreement did not contain any provision whereby the purchaser could accelerate payments. Neither did it suggest the desirability of a partial fulfillment and deed-release clause. The agreement was signed "Robert Ramsey, by R. Roland" as purchaser. Appellants, feeling the interest payable would make up for the price difference, signed the agreement and further agreed to pay a commission of $2,300 to Roland & Roland, Inc., as agents for procuring the proposed sale.

Approximately 2 weeks later, in the first part of June, 1961, appellants were called to the broker's office where they were presented with a real-estate contract which had not yet been signed by the purchasers, some of whom, including Robert Roland, were not named in the contract as presented. As opposed to the earnest-money agreement, this contract contained a payment acceleration provision. Although expressing dissatisfaction with this addition, appellants signed the contract.

After appellants had affixed their signatures, the office secretary for the Roland real-estate firm inquired of appellants if they would permit the insertion of a partial fulfillment and deed-release clause in the contract, provided they received one-half of the proceeds from any resale of portions of the property. Appellants without further inquiry or discussion agreed. The secretary then typed the following addition into the contract; the bracketed portion being added in longhand at appellants' request:

The purchasers herein contemplate platting and subdividing the property herein described and the sellers agree to join in the execution of said plat [at no expense to sellers]. In the event of sale by the purchasers of any portion or portions of said property, the sellers herein agree to release and execute a Warranty Deed for said portion or portions sold upon payment to them, their heirs, successors or assigns, in cash of 50% of the sale price of said portion or portions sold.

Appellants placed their initials beside the added clause and left the office.

In the meantime, respondent Robert Roland completed organization of the joint venture undertaking the purchase of appellants' property. The members of this enterprise, respondents Ramsey, Butler, Pastermack and Robert Roland, on behalf of the Roland firm, signed the contract which appellants had already signed. A copy of the completed contract was then mailed to and received by appellants in the latter part of June, 1961. When they received the copy, appellants learned for the first time that Robert Roland, their broker and agent, was involved in the purchase of their

property. They discussed the matter between themselves but made no objections.

Between June, 1961, and September, 1964, appellants executed four deeds to portions of the 80-acre tract at the request of the joint venture. During that same period, appellants received 44 checks from the joint venture representing payments on the contract. Four of these checks were for an amount equal to one-half of that for which portions of the tract had been resold. Twenty-six of the checks, including two of those for which deed releases were given, had on their face or on attached vouchers notations of the allocation of the face amount of the respective check to the outstanding principal and earned interest under the contract as well as a computation of the contract balance thereafter due. Appellants cashed all checks without objecting to the allocations or computations until the last check arrived. That check was marked "payment in full." Appellants cashed the final check but asserted that the full contract price had not yet been paid, thus for the first time communicating to respondents their interpretation of the partial fulfillment and deed-release clause, which was that the payments therein provided for were in addition to the contract price of $23,000.

Respondents rejected appellants' interpretation of the clause, claimed payment had been made in full, and brought this action to enforce the contract, which in turn prompted appellants' counterclaims of fraud, breach of fiduciary duty, and for the balance allegedly due on the contract.

The trial court found as a fact that $23,000 was a reasonable and fair price for the property at the time the contract was negotiated and that respondents had not been guilty of fraud. The trial court further found and concluded that appellants had ratified the transaction with respect to both the inclusion of Robert Roland as a purchaser of the property and the application of deed-release moneys to the balance owing under the contract. The trial court, however, determined that Robert Roland, individually and on behalf

of the Roland firm, had breached his duty of loyalty to his principals, when as a broker-agent he induced appellants to agree to the deed-release clause which was inserted solely for the benefit of the purchasers.

On appeal, appellants make numerous assignments of error. By way of argument in support of the assignments, however, appellants advance the principal contention that the trial court erred in finding and determining that, under all of the circumstances, the parties intended the deed-release payments to apply on the contract price and/or that appellants by their actions ratified and concurred in respondents' interpretation of the deed-release clause and its affinity to the contract price.

We cannot agree with appellants' contention.

When a contract or a provision thereof is ambiguous or susceptible of more than one meaning, it becomes the duty of the trier of the facts to search out and ascertain the intent of the contracting parties. This must be accomplished by viewing (a) the contract as a whole, (b) the subject matter and objective of the contract, (c) the circumstances surrounding the making of the contract, (d) the subsequent acts and conduct of the parties in relation to the contract, and (e) the reasonableness of the respective interpretations advocated by the parties. *Boeing Airplane Co. v. Firemen's Fund Indem. Co.,* 44 Wn.2d 488, 268 P.2d 654, 45 A.L.R.2d 984 (1954); *Clements v. Olsen,* 46 Wn.2d 445, 282 P.2d 266 (1955); *Felton v. Menan Starch Co.,* 66 Wn.2d 792, 405 P.2d 585 (1965); *Dickson v. Hausman,* 68 Wn.2d 368, 413 P.2d 378 (1966).

The trial court in the instant case, in reaching its determination that the parties involved intended the deed-release payments to apply on the contract price, followed these guidelines and reached a result clearly consistent with the guidelines as well as with substantial evidence adduced at the trial. Under these circumstances we are loathe to disturb the trial court's findings.

Appellants, however, strenuously argue that the trial court did not attach sufficient significance to the fact that

they were uneducated, inexperienced in real-estate matters, and unable to fluently speak or read the English language. In effect, appellants contend that they were virtually incapable of ordinary prudence and were, therefore, overreached by respondents and that the trial court should have so concluded.

Again we disagree. There is ample evidence to sustain the trial court's finding that the sale price negotiated between the parties was fair and reasonable at the time of the contract. Likewise there is substantial evidence in the record indicating that appellants had engaged in various business ventures, were familiar with installment contracts and the significance of payment acceleration provisions, and annually prepared and filed their business and personal tax returns. And, it is virtually undisputed that appellants observed, understood, and appreciated the import of the notations and computations on or accompanying the various checks they received and accepted without objection during the course of the contract.

The trial court, under these circumstances, did not err in concluding that appellants, despite the limits of their formal education, knowledgeably acquiesced in an interpretation of the deed-release clause permitting application of partial payments to the contract balance. It follows that they were not overreached in this aspect of the case.

On their cross-appeal, respondents assign error to the trial court's conclusion that respondents Roland forfeited their right to a broker's commission because of a breach of fidelity to appellants. They contend that appellants, by their conduct subsequent to the initiation of the contract of sale, in effect ratified the contract, including Robert Roland's interest as a purchaser; hence, there was no actionable breach of duty.

Respondents' argument, however, overlooks the precise basis upon which the trial court determined there had been a breach of fidelity. By its findings of fact the trial court found, upon substantial evidence, that the partial fulfillment and deed-release provision was inserted in

the contract of sale solely for the benefit of the purchasers. From this finding the trial court went on to conclude that the Rolands, being agents of appellants, were bound to deal with their principals' property and interests solely for the benefit of their principals and when, therefore, they unilaterally undertook to promote a significant interest of the prospective purchasers of appellants' property they breached their duty of loyalty to an extent warranting a forfeiture of their commission.

We are satisfied the evidence fully warranted the trial court's finding of fact and that the circumstances under which respondents Roland presumed to act for the exclusive benefit of the joint-venture purchasers, of which respondents Roland were members, sustains the trial court's conclusion of law. *Cf. Mersky v. Multiple Listing Bureau of Olympia, Inc.,* 73 Wn.2d 225, 437 P.2d 897 (1968).

The judgment of the trial court is in all respects affirmed.

HILL, FINLEY, and NEILL, JJ., and GAINES, J. Pro Tem., concur.