[No. 848-2.    Division Two.    September 27, 1973.]

WESCO REALTY, INC., *Appellant*, v. CLARENCE O. DREWRY *et al.*, *Respondents*.

*Jerome L. Buzzard* (of *Buzzard, Brown & Glenn*), for appellant.

*Dale M. Nordquist* (of *Nordquist, Olson & Pietig*), for respondents.

ARMSTRONG, J.—Plaintiff Wesco Realty commenced this appeal from a judgment dismissing plaintiff's complaint for a real estate commission of $36,000 and entering judgment for defendants Drewry.

The facts reveal that on September 9, 1971 plaintiff Wesco Realty, through its agent Owen Morgan, entered into a real estate broker's employment contract with the defendants whereby defendants agreed to pay plaintiff a

commission of 10 percent of the selling price of defendants' farm property if plaintiff should produce a buyer ready and willing to enter into a deal at the price and terms noted in the contract, or on such other terms as the defendants might accept. On September 22, 1971 plaintiff delivered to defendants an earnest money receipt and agreement for the sale of the property, which agreement was modified and signed by the defendants, and then accepted as modified by the prospective purchaser. When the plaintiff subsequently presented various closing documents to the defendants, they refused to perform. Plaintiff thereafter commenced this action for the recovery of the real estate commission.

The primary issue raised by this appeal is whether substantial discharge of the broker's duty to exercise the utmost good faith and fidelity toward his principal is a condition precedent to any recovery upon the part of a broker for the services he has rendered his principal. We hold that a failure to properly discharge the broker's duty of loyalty does preclude the broker from recovering his commission.

At the outset, it should be noted that the trial court's findings of fact and conclusions of law raised the question of whether or not there was a "meeting of the minds" of the parties. For example, it was the contention of the defendants, and the trial court specifically found, that the defendants understood the meaning of the earnest money agreement to be different than that attached to the document by the plaintiff. However, the unexpressed understanding of one of the parties to a contract as to its meaning is generally of no legal significance. *Bond v. Wiegardt*, 36 Wn.2d 41, 54, 216 P.2d 196 (1950), Restatement of Contracts § 71 (1932). If a party's words or acts, judged by a reasonable standard, manifest an intention to agree in regard to the matter in question, that agreement is established, and it is immaterial what may be the real but unexpressed state of the party's mind on the subject. *Gaasland Co. v. Hyak Lumber & Millwork, Inc.*, 42 Wn.2d 705, 710, 257 P.2d 784 (1953); *Washington Shoe Mfg. Co. v. Duke*, 126 Wash. 510, 218 P. 232, 37 A.L.R. 611 (1923).

■ However, even if it is assumed that there was mutual assent, and that the earnest money receipt and agreement was sufficiently definite and unambiguous to constitute a valid contract,[1] such an assumption does not end our inquiry. It is true that as a general rule a real estate broker becomes entitled to his commission as soon as he procures a purchaser who is accepted by the principal and with whom the principal enters into a binding and enforceable contract. *Dryden v. Vincent D. Miller, Inc.*, 56 Wn.2d 657, 354 P.2d 900 (1960); *White & Bollard, Inc. v. Goodenow*, 58 Wn.2d 180, 361 P.2d 571 (1961). It is also true, though, that this rule is not applicable where the principal's acceptance of the purchaser occurs under circumstances amounting to a breach of the broker's duty of loyalty to his principal. *Farrell v. Score*, 67 Wn.2d 957, 411 P.2d 146 (1966).

It has been repeatedly held that a real estate broker owes to his client the duty to exercise the utmost good faith and fidelity, to make a full disclosure of all facts within the broker's knowledge which might affect the principal's rights and interests or influence his actions, and to deal with the principal's property solely for the principal's benefit. *Investment Exch. Realty, Inc. v. Hillcrest Bowl, Inc.*, 82 Wn.2d 714, 513 P.2d 282 (1973); *Mersky v. Multiple Listing Bureau*, 73 Wn.2d 225, 437 P.2d 897 (1968); *Moon v. Phipps*, 67 Wn.2d 948, 411 P.2d 157 (1966). The rule is succinctly stated in 12 Am. Jur. 2d *Brokers* § 168 (1964), at 909 as follows:

> A broker is not entitled to compensation if he fails to disclose to his principal any personal knowledge which he possesses relative to matters which are or may be material to his employer's interests, or if he acts adversely thereto, either for the purpose of aiding another or with the design of securing a secret profit for himself, or otherwise advancing his own welfare at the expense of that of his employer.

(Footnotes omitted).

---

[1]*See Hedges v. Hurd*, 47 Wn.2d 683, 289 P.2d 706 (1955); *White & Bollard, Inc. v. Goodenow*, 58 Wn.2d 180, 361 P.2d 571 (1961).

Here the record discloses that the six defendants (three married couples hereinafter referred to as the Drewrys) entered into a real estate broker's employment contract with plaintiff to sell their property, in part because, as Virgil Drewry testified, "It's hard to make ends meet on a farm." Prior to signing the employment contract, the Drewrys discussed with the plaintiff their reasons for listing the property and what they expected to obtain. Owen Morgan, the sales agent for Wesco Realty, when asked what reasons the seller had indicated to him testified as follows:

Q And did you discuss with the Defendants their reason or reasons for listing the property for sale with you?

A Yes.

Q And can you advise the Court what they indicated to you was their reason or reasons for doing that?

A They were behind on their real estate taxes for two years, a total of about ten thousand dollars, and the farm had lost its Grade "A" milk base status, and they weren't making the money, enough money to continue with the farm, and they had to sell it. It's not that they wanted to, it's that they had to. Financially it wasn't making sense.

The employment contract was entered on September 9, 1971 and provided for a selling price of $500,000, between 25 percent and 29 percent as a downpayment, $4,400 or more as monthly payments, and 7 percent per annum interest on a declining principal balance, "or such other terms and price as [sellers] might accept."

The trial court found that the earnest money receipt and agreement that was signed by the Drewrys was "markedly different in its terms from the employment contract." It provided, in part, for a sale of one parcel for $80,000, with $20,000 as a downpayment, and for the granting of an option to sell the other parcel at $280,000. The buyer was to pay $10,000 to purchase the option.

Wesco's sales agent, Owen Morgan, admitted in his testimony that he expected that the Drewrys would rely on his explanation of the terms and details of this earnest money receipt and agreement. Nevertheless, there is substantial

evidence to support the trial court's findings that the earnest money receipt and agreement was difficult, if not impossible, to read; that Clarence Drewry, Sr., was 78 years old and had poor eyesight and hearing that prevented his understanding the transaction; that Clarence Drewry, Sr., was emotionally upset at the time of signing; and that Loretta A. Drewry was in poor health and unable to participate in the discussions on the earnest money receipt. There is also substantial evidence to support the further findings of the trial court that plaintiff had a duty to see that all of the defendants understood the terms of the transaction; that all of the parties appeared to be confused by the earnest money receipt; and that the confusion of the parties could have been eliminated by plaintiff presenting a written statement explaining the transaction in simple terms.

We noted previously that the failure of the Drewrys to subjectively understand the nature of the earnest money receipt and agreement may not be sufficient to conclude that the agreement was not binding and enforceable as to the purchaser because of a lack of mutual assent. However, we find that where the broker knows the particular financial position of his principal, and that his principal is relying on him to explain the terms of a transaction, failure to fully disclose the material facts of that transaction, especially the fact that after the selling costs, taxes, and commission were paid the sellers would have minimal cash in hand from the downpayment, amounts to a breach of the duty imposed upon the broker to promote the best interests of his principal.

Since the seller's acceptance of the purchaser by entering into the earnest money receipt and agreement occurred under circumstances amounting to a breach of the broker's duty of loyalty to his principal, the existence of this agreement did not entitle the broker, Wesco Realty, Inc., to its commission.

■ Even though we have concluded that the conduct of the plaintiff was of a character warranting a determination that Wesco did not become entitled to its commission, we

note additionally that a broker may breach his duty of loyalty to his principal *subsequent* to the entry of a valid earnest money agreement to an extent warranting a *forfeiture* of his commission. *Ramsey v. Sedlar,* 75 Wn.2d 901, 908, 454 P.2d 416 (1969), *cf. Investment Exch. Realty, Inc. v. Hillcrest Bowl, Inc., supra.* In the *Ramsey* case, the sellers entered into an earnest money agreement that did not contain any provision whereby the purchaser could accelerate payments nor providing for a "partial fulfillment and deed-release clause." The real estate contract the broker thereafter presented to the sellers did contain these provisions, which the trial court found had been inserted in the contract solely for the benefit of the purchasers. Upon these facts the court held that when the brokers "unilaterally undertook to promote a significant interest of the prospective purchasers of appellants' property they breached their duty of loyalty to an extent warranting a forfeiture of their commission." *Ramsey v. Sedlar, supra* at 908.

In this case the plaintiff attempted to obtain the Drewrys' signature on closing documents among which was an option containing the following provisions which were not in the earnest money agreement:

> Seller further recognizes and hereby agrees that Purchaser, during the term of this Option or any extension thereof, may petition to rezone said property for commercial usage, may have the property surveyed to determine exact boundary lines, may negotiate and show the property to prospective developers, lessees, purchasers or others during the term of this Option. In the event Purchaser shall plat or otherwise divide said property, seller agrees to sign each plat, execute all necessary documents and make all dedications necessary to accomplish the filing of such plats. This paragraph is for clarification and is required by Purchaser as a consideration for taking this option. The provisions hereof are intended to be specifically enforceable except as otherwise stated herein and shall inure to the benefit of and shall bind the parties hereto, their heirs, devisees, personal representatives, successors and assigns. Purchaser has the right to assign their rights and interests under this Option without first obtaining the consent of Seller to do so.

These terms were not requested by the Drewrys and there is substantial evidence to support the trial court's finding that these different terms in the proposed option were for the benefit of the purchaser. From these facts the trial court concluded, and under the authority of *Ramsey v. Sedlar, supra,* we must agree, that by introducing new terms for the benefit of the buyer in the proposed closing documents, the plaintiff abandoned its duty of loyalty to the sellers to the extent warranting no recovery by plaintiff.

Furthermore, the record reflects that plaintiff's agent, Owen Morgan, was well aware of the reluctance of the Drewrys to sell their farm property both before and after the signing of the earnest money agreement, and that on October 26, 1971, Mr. Morgan was notified that the Drewrys had obtained an attorney who had advised the Drewrys to disregard the earnest money agreement as unenforceable. Despite this knowledge, Mr. Morgan nevertheless went out to the Drewrys' farm and attempted to obtain the Drewrys' signature on the closing documents, including the option containing the additional terms for the benefit of the purchaser. From this conduct the conclusion is inescapable that Mr. Morgan was acting adversely to his employer's interests either for the purpose of aiding another or otherwise advancing his own welfare with respect to the commission at the expense of that of his principal.

We therefore conclude that because of the failure of plaintiff, Wesco Realty, Inc., to faithfully discharge its duty of loyalty to the Drewrys, the judgment of the trial court denying recovery of the $36,000 real estate commission must be and is hereby affirmed.

PEARSON, C.J., and PETRIE, J., concur.