606 P.2d 987

FOREMOST INSURANCE COMPANY, Plaintiff, Counter-Defendant, Cross-Defendant and Respondent,

v.

Harold PUTZIER and Bob Crandall, Defendants, Counter-Claimants, Cross-Claimants and Appellants,

and

Antonio R. Guanche, Defendant, Counter-Claimant, Cross-Claimant and Respondent,

and

O. K. Swenson, Darrell Clark, Brent Hunter, Lee J. Brindley, Twin Falls Jaycees, Inc., and Marion Swenson, Defendants, Cross-Defendants and Respondents,

and

Stanley Associates, Cross-Defendant, Cross-Claimant and Respondent,

and

Virginia Dane, Personal Representative of the Estate of Dudley C. Dane, deceased, Virginia Dane, and Sheriff Paul Corder, Cross-Defendants and Respondents,

and

Robert C. KNIEVEL, also known as Evel Knievel, and Snake River Canyon Enterprises, Inc., Defendants, Counter-Claimants Cross-Defendants, Cross-Claimants, Third Party Plaintiffs and Appellants,

v.

FIDELITY MARKETING CORPORATION and Cardell W. Smith, Third Party Defendants, Cross-Defendants and Respondents.

Nos. 12800, 12823.

Supreme Court of Idaho.

Feb. 21, 1980.

Susan Porter-McClard of Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, for Putzier and Crandall.

James T. Jones, Jerome, for Knievel and Snake River Enterprises.

John A. Doerr and Kevin F. Trainor, Twin Falls, for Foremost Ins. Co.

DONALDSON, Chief Justice.

This action arose in connection with the events surrounding the September 9, 1974 attempt by Robert C. Knievel, a/k/a Evel Knievel, to jump the Snake River Canyon near Twin Falls, Idaho on a jet powered motorcycle. As a prerequisite to his use of the land required for the event, Knievel and Snake River Enterprises, Inc. (the entity by which Knievel undertook the event) were required to secure a land use permit from the State of Idaho and a license from Twin Falls County.

Paragraph 8 of the State Department of Lands Temporary Land Use Permit (defendant Knievel's exhibit 3) provided:

"8. The permittee is required to maintain comprehensive public liability insurance covering his operations under the permit in the following minimum amounts:

(a) $300,000.00 for bodily injury to any one person and $1,000,000.00 for any one occurrence.

(b) $100,000.00 for property damage for any one occurrence.

(c) The permittee shall cause the State of Idaho, Jerome County, Ray Lickley and the L L Breckenridge Co. to be named as additional insureds under this policy and shall submit a certificate from an insurer on or before August 20, 1974, that such insurance has been obtained, is in force, and that the insurer will give the State of Idaho ten days notice prior to cancellation or modification of such insurance. Additional insureds shall not be responsible for payment of premiums."

Paragraph 3 of the Twin Falls County License provided:

"3. That the licensee shall obtain a minimum amount of liability insurance of $100,000.00 for the injury or death of a single person, $1,000,000.00 for injury or death resulting from any one accident and property damage of not less than $25,000.00, which policy shall include coverage jointly for Twin Falls County, Idaho."

For the purpose of obtaining the insurance required by the permit and license, Knievel's attorneys entered into negotiations with one Cardell Smith, a vice-president of the Fidelity Marketing Corporation insurance brokerage. In the course of the negotiations Smith dictated a letter to Knievel's attorney through the attorney's secretary. The letter read in part:

"Dear Mr. May:

Effective 8–27–74 Fidelity Insurance Group is writing a comprehensive general liability policy on the following named insured and also the following additional insureds. The named insured: Snake River Canyon Enterprises, Inc., Evel Knievel, individually."

The letter then named several additional insureds, stated that "the policy is a comprehensive general liability covering all named insureds and additional insureds," and set the total premium at $9,600. Under the heading "Coverage" the letter set out the dollar limits and stated "Exclusion on all participants (security guards, motorcycle riders, etc.)." Thereafter, Knievel's attorney sent Smith the following:

"Dear Cordell:

Enclosed is the $9600 check for the insurance policy as we discussed in my office Friday.

It is my understanding the certificate of insurance is being mailed to those who need them today, and that we will receive a letter as to how the claims will be handled and related matters, the first of the week, together with the policy itself. . . ."

These negotiations culminated in the issuance by Foremost Insurance Company to Knievel and Enterprises of an insurance policy, which policy was later superseded by a second policy, effective August 28, 1974. Attached near the middle of the 29 separate pages of the second policy was an exclusion designated G332 which provided:

"It is agreed that the insurance does not apply to bodily injury or property damage arising out of riot, civil commotion or mob action or out of any act or omission in connection with the prevention or suppression of any of the foregoing."

There was conflicting testimony as to whether this was read by or discussed with Knievel's attorneys.

Knievel attempted the jump September 4, 1974. During the preceding day or two, numerous unknown individuals damaged or destroyed the goods and equipment of Harold Putzier and Bob Crandall, each of whom was a concessionaire at the time. Putzier and Crandall filed an action against Knievel and Enterprises to recover compensation for their damages. Knievel's original counsel tendered defense of the action to Foremost pursuant to a provision in the policy. Foremost then instituted an action for declaratory judgment, seeking a declaration that, pursuant to exclusion G332, it was not liable on the policy for the damage incurred by the concessionaires. Named as defendants in the declaratory judgment action were Putzier, Crandall, Knievel, and Enterprises, among others. The two actions were apparently consolidated, but by stipulation of the parties the action was bifurcated and trial was had only on the issues of Foremost's liability under the insurance policy and the allocation of attorney fees. The trial court held the exclusion valid in all respects; that the damage sustained by Putzier and Crandall fell within the exclusion, thereby relieving Foremost of liability for the damage; and that Foremost was liable to Knievel and Enterprises for attorney fees incurred in defending against the property damage claims of Putzier and Crandall, but not for attorney fees incurred in representation on the issue of presence or absence of policy coverage. Knievel and Enterprises bring one appeal from that judgment, as do Putzier and Crandall. The two appeals present similar issues and con-

tentions and are consolidated here. We affirm.

■ The first issue presented is whether the trial court erred in finding the exclusion valid and applicable, thereby defeating appellants' claim of policy coverage. Appellants initially contend the parties entered into a valid contract for comprehensive general liability coverage prior to the issuance of the policy itself. In their view, the exclusion in the subsequently issued policy was at variance with the contract earlier negotiated, and therefore constituted a modification to which there was no agreement. Respondent Foremost agrees that a contract for liability coverage was negotiated by its agent and Knievel's attorneys. However, the parties are in sharp disagreement on the question whether the riot exclusion was at odds with the coverage for which Knievel bargained. Foremost contends, and the trial court found, that before August 28, 1979 (the effective date of the coverage), all exclusions, including the riot exclusion, were read to Knievel's attorney over the telephone and a general discussion was had concerning the athletic, medical malpractice, and pollution exclusions. A week later, a meeting was had between Foremost's agent and Knievel's attorneys. At this meeting, the insurance agent inquired of one of Knievel's attorneys whether he was familiar with the policy and whether there were any questions concerning it. Knievel's attorney advised that the policy had been reviewed and that he had no questions about it. Discussion was then had on the procedures to be used in processing claims covered by the policy. No dissatisfaction with the policy was expressed until after the event. Foremost's agent testified that the riot exclusion was common to comprehensive general liability policies written for special events, and that removal of the exclusion could be had only upon payment of an additional premium. Knievel's insurance expert testified on direct examination that a standard comprehensive general liability policy would not contain such an exclusion. However, it was brought out on cross-examination that he had never written such a policy and did not

deal in the type of coverage involved here. Based on the evidence before it, the trial court concluded the written policy, together with the four exclusions attached thereto, accurately reflected the agreement of the parties. Nothing in the record compels a different conclusion here.

■ Appellants next attack the validity of the exclusion on the ground it was in contravention of the public policy of this state. They contend that by requiring Knievel to maintain "comprehensive public liability insurance" as a condition precedent to the validity of the temporary land use permit issued to him, the State of Idaho, through the Department of Lands, has articulated a policy which precludes recognition of the riot exclusion. We disagree. An agreement voluntarily made between competent persons is not lightly to be set aside on public policy grounds. Whether the contract is against public policy is to be determined from all the facts and circumstances of each case. *Stearns v. Williams,* 72 Idaho 276, 240 P.2d 833 (1952). In our view, the requirement of the land use permit that Knievel carry comprehensive public liability coverage falls far short of any declaration of public policy against exclusions for damage occasioned by riot, civil commotion, or mob action. Nor do we find the exclusion inimical to any articulable public interest. Accordingly, we decline to hold the exclusion void as against public policy.

■ It is next argued the doctrine of estoppel should be applied to prevent Foremost from raising the exclusion at all. However, the purpose of the doctrine in insurance cases is to enforce the contract as originally agreed upon by the parties, and not to write a new contract. *Lewis v. Continental Life and Accident Co.,* 93 Idaho 348, 461 P.2d 243 (1969). As we pointed out above, the trial court found, on substantial and competent evidence, that Knievel's attorneys were made aware of the exclusion before the effective date of coverage, and made no comment or inquiry concerning it. From this, it was proper for the court to

conclude the policy, with the exclusions, represented the agreement of the parties. The doctrine of estoppel is inapplicable here.

 In a related argument, appellants contend the doctrine of reformation should be applied to write the exclusion out of the policy. However, reformation is inapplicable where, as here, the writing is a true expression of the parties' agreement. *See Bilbao v. Krettinger,* 91 Idaho 69, 415 P.2d 712 (1966).

 Appellants also urge application of the doctrine of reasonable expectations. The thorn of *Corgatelli v. Globe Life & Accident Ins. Co.,* 96 Idaho 616, 533 P.2d 737 (1975), which made the adoption of that doctrine in Idaho a debatable question, was recently removed from the side of our jurisprudence. *Casey v. Highlands,* 100 Idaho 505, 600 P.2d 1387 (1979), decided after this appeal was brought, expressly rejected the doctrine of reasonable expectations in favor of traditional contract rules of construction. We therefore reject appellants' contention that the doctrine of reasonable expectations should be applied here.

 Appellants next contend the exclusion must fall because it was inconspicuous and ambiguous. Both contentions are without merit. We need not discuss the question whether the exclusion was inconspicuous, and if it was what effect such a determination would have, because Knievel's attorneys were expressly made aware of its existence prior to the effective date of the coverage. Nor do we find any basis for the contention that the language used in the exclusion is subject to more than a single, plain meaning.

 Finally appellants contend respondent Foremost failed to carry its burden of proving the damage sustained was caused by activity specified in the exclusion. We disagree. In the absence of ambiguity, the words used in an insurance policy are to be given their plain, ordinary and popular meaning. *Casey v. Highlands, supra; Lively v. City of Blackfoot,* 91 Idaho 80, 416 P.2d 27 (1966); *Thomas v. Farm Bureau Mut. Ins. Co. of Idaho,* 82 Idaho 314, 353 P.2d 776 (1960). The trial court entered the following findings of fact concerning the activities here involved:

"12. An estimated ten to fifteen thousand people congested at the jump site on September 7, 1975, and sometime after dark some of the people present knocked down a number of temporary toilets or "outhouses" and others, riding motorcycles, jumped over the downed toilets. At about the same time several hundred of the people present surrounded a large semi-trailer, and members of the crowd broke into it and removed its contents, consisting of cases of beer, which was distributed and drunk by a great number of those present.

"13. Shortly after the beer was removed from the semi-trailer referred in Finding [12], the crowd moved over to another large semi-trailer, surrounded it, and members of the crowd broke a hole through its roof and removed its contents, consisting of beer, watermelons, cantaloupes and meat, which was distributed to the people congregated thereabouts."

These findings are clearly supported by the evidence and will not be disturbed. *Nesbitt v. Wolfkiel,* 100 Idaho 396, 598 P.2d 1046 (1979). Based on these findings and the authorities cited above we conclude, as did the trial court, that the damages sustained by appellants Putzier and Crandall were caused by persons who formed or were part of a mob and arose out of civil commotion or mob action.

In view of our disposition of the issue of liability coverage, it is not necessary to discuss other arguments addressed to that issue.

 Appellants Knievel and Enterprises present the additional argument that the trial court should have held Foremost contractually liable to them for attorney fees incurred in the declaratory judgment action. The policy provision upon which they rely is as follows:

"[T]he company shall have the . . . duty to defend any suit against the insured seeking damages on account of . . . property damage. . . ."

The trial court concluded the provision obligated Foremost to pay the attorney fees incurred by Knievel and Enterprises in any action brought against them for damage to property caused by an occurrence arising out of their use or maintenance of the jump site premises, but that Foremost was *not* obligated to provide them with attorneys for defense of the action for declaratory judgment on the issue of policy coverage. We agree that Foremost was not liable for attorney fees in the declaratory judgment action. The policy provision giving rise to the duty to defend is addressed only to direct actions against the insured for damages, and is totally inapplicable where the action is for a declaration of rights under the policy itself. I.C. § 41–1839, allowing attorney fees in certain suits against insurers, is of course inapplicable, it having been adjudicated that no amount was justly due Knievel and Enterprises under the terms of policy coverage.

Attorney fees incurred in this appeal are sought by respondent. However, it appearing the appeal was brought in good faith, and presented genuine issues, we decline to award attorney fees on appeal to respondents. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979).

The judgment of the trial court is affirmed. Costs to respondent.

BAKES, McFADDEN and BISTLINE, JJ., and HARGRAVES, J., Pro Tem, concur.