627 P.2d 317

**FOREMOST INSURANCE COMPANY, Plaintiff and Counterdefendant and Appellant,**

v.

**Harold PUTZIER and Bob Crandall, Defendants and Counterclaimants and Cross-claimants,**

and

**Antonio R. Guanche, Defendant and Counterclaimant and Cross-claimant and Respondent,**

and

**O. K. Swenson, Darrell Clark, Brent Hunter, Lee J. Brindley, Twin Falls Jaycees, Inc., and Marion Swenson, Defendants and Cross-defendants,**

and

**Stanley Associates, Virginia Dane, Personal Representative of the Estate of Dudley C. Dane, Deceased, The Estate of Dudley C. Dane, Virginia Dane, and Sheriff Paul Corder, Cross-defendants.**

No. 12934.

Supreme Court of Idaho.

April 16, 1981.

---

John A. Doerr and Kevin F. Trainor, Twin Falls, for plaintiff and counterdefendant and appellant.

Paul M. Beeks of Smith & Beeks, Webb, Burton, Carlson, Pedersen & Paine, Donald A. Ronayne of Rayborn, Rayborn, Ronayne & Ritchie, Twin Falls, Michael Morfitt of Coulter & Reid, Elam, Burke, Jeppesen, Evans & Boyd, Boise, for defendants and counterclaimants and cross-claimants.

BISTLINE, Justice.

Antonio Guanche was named as a defendant in Civil Action No. 27353, Fifth Judicial District of the State of Idaho, which action produced two other appeals in addition to this. Those other two appeals, which were consolidated, were decided in *Foremost In-. surance Co. v. Putzier*, 100 Idaho 883, 606 P.2d 987 (1980). In that opinion this Court upheld the trial court's determination as to

the extent of *liability* coverage under the Foremost policy.

This appeal was taken by Foremost from the trial court's decision that Foremost is liable to Antonio Guanche, as a first party insured. The relationship of Foremost and Guanche is well stated in the trial court's findings of fact:

"Insofar as the issues framed by the complaint and defendant Guanche's answer to that complaint are involved in these proceedings, the following additional findings and conclusions are made.

"14. The defendant Antonio R. Guanche speaks English in a heavy French-Italian dialect, which makes communication in the English language difficult between Guanche and third parties. At all times material to this proceeding he was engaged as a chef and entrepreneur. He had permission of the defendant Snake River Canyon Enterprises to erect a food stand on the premises to be used in selling food and drink to the spectators attending the public spectacle. He was told by one Veccio, an agent of the defendants Knievel and Snake River Canyon Enterprises, that he was required to have insurance before he began the operation of his food concession, and that it was obtainable through the plaintiff. [Foremost]

"15. Sometime prior to August 28, 1977, the defendant Guanche delivered his check in the amount of $300 to Cardell W. Smith in return for insurance coverage. Guanche's $300 was accepted by Smith on behalf of the plaintiff, and Smith told Guanche that he was 'covered.' The record will not support any finding that Guanche ever advised plaintiff of the type or kind of insurance he desired, nor will it support a find that Guanche was ever advised by plaintiff as to the specific insurance coverage his $300 was purchasing. He has never been provided with any insurance policy. He has not read any insurance policy purporting to evidence his insurance contract with the plaintiff. He simply paid his money and was told that he was 'covered.'

"16. *The defendant Guanche intended to insure his property against loss caused by theft* or the elements, *and* at all times material to this action *believed that* upon payment of $300 to the plaintiff *the property* located at the jump site in which he had an interest *was insured* by plaintiff *against loss by theft,* fire or other calamity. *This belief was a reasonable belief under the facts in this case.*

"17. Sometime prior to September 7, 1974, the defendant Guanche had purchased, and had delivered to the jump site, a large truckload of provisions consisting of beer, melons, meat and ice cream. The activity described in Finding 13 involved property owned by the defendant Guanche."[1] (Emphasis added.)

The trial court entered the following conclusions of law:

"F When the plaintiff accepted a premium from Guanche, it had a duty to provide him with the insurance policy or advise Guanche in detail of the risks it was assuming in return for the premium. Failure to do so makes Guanche's intentions and expectations paramount in interpreting the terms of any insurance contract existing between Guanche and the plaintiff.

"G *Under the theories expounded in Corgatelli v. Globe Insurance,* 96 Idaho 616 [533 P.2d 737], *a valid contract of insurance existed* between the plaintiff and the defendant Guanche, supported by ample consideration, *which provided Guanche with first party coverage* for loss of and damage to property in which Guanche had an interest, and which was located at the jump site between August 28, 1974 and September 10, 1974." (Emphasis added.)

---

1. Finding No. 13:

"Shortly after the beer was removed from the semi-trailer referred to in Finding 11, the crowd moved over to another large semi-trailer, surrounded it, and members of the crowd broke a hole through its roof and removed its contents, consisting of beer, watermelons, cantaloupes and meat, which was distributed to the people congregated thereabouts."

Foremost moved to delete the foregoing findings and conclusions, contending that:

"The basis for said Motion is that *the question of whether or not there was first party coverage for Guanche* under the insurance policy issued by Foremost *was not to be tried in the trial on January 13 and 14 and March 28, 1977.* The plaintiff Foremost did not contemplate that this issue would be tried and therefore did not, in fact, present any evidence on the issue of whether or not there was any first party coverage for Guanche." (Emphasis added.)

The trial court by order denied Foremost's motion, but gave leave to Foremost to renew it within two weeks "upon an offer of competent evidence in defense of the issues determined ... in favor of ... Guanche and against plaintiff [Foremost]." No such offer was ever made.

Thereafter a monetary summary judgment in favor of Guanche and against Foremost was entered for Guanche's damages. The judgment contains a recitation of the procedure which led to the entry:

"Defendant filed 'Motion for Summary Judgment' October 28, 1977, based upon accompanying affidavits and findings of fact and conclusions of law dated August 11, 1977. The motion was heard December 5, 1977, at which time counsel stipulated that defendant's damages were $29,979.63 and counsel for defendant indicated there were no objections to the entry of a summary judgment for that sum. Thereafter a stay order was entered staying further proceedings in this action pending a determination by the Supreme Court of an appeal of the findings of fact and conclusions of law by other parties to this action. On December 20, 1977, and upon stipulation of counsel, the stay order was vacated by the Chief Justice of the Supreme Court. There appears to be no reason why Summary Judgment should not now be entered.

"It is, therefore, ORDERED, ADJUDGED and DECREED that the defendant Antonio R. Guanche recover from the plaintiff Foremost Insurance Company $29,979.63 damages, together with his costs taxed at $3,746.10, and that the claims of Foremost against Guanche and Guanche against Foremost be severed from this action and the remainder of the case be proceeded with according to law."

Following the entry of the monetary judgment above set forth, Guanche moved for an amendment so as to provide for interest. In a written decision allowing the amendment, the trial court observed as to Foremost's renewed contention that the entry of findings and conclusions in favor of Guanche was procedurally improper: [2]

"But Foremost filed complaint against Guanche alleging that it extended Guanche no insurance coverage under policy GAL672–7187006 and was not liable to Guanche for any losses suffered by him, and Guanche filed answer denying these allegations. *It seems to me that the overall issue presented by Foremost's complaint and Guanche's answer was whether there existed any insurance coverage for Guanche, and that the issue was not limited only to whether policy GAL672–7187006 provided insurance coverage.* In addition, at the close of the trial Foremost asked for and was given additional time in which to present evidence that was not readily available to it on the date of trial. And on at least one other occasion counsel was given the opportunity to present an offer of proof with the assurance that if the offer of proof indicated the availability of evidence which would tend to change or modify the findings and conclusions with respect to Guanche-Foremost then en-

---

**2.** Foremost does not assign this as an error on appeal. We note only that the action was brought by Foremost, and it was Foremost that called Guanche as a witness and developed the testimony which was to lead to his recovery. Before testimony was taken there was also an unreported conference of court and counsel which may have established the issue. Such is clearly indicated by Foremost's own motion as above quoted, made in challenging findings and conclusions.

tered, that the court would reopen the case to allow such proof to be submitted for the record. No offer of proof was ever submitted. I do not think that Foremost can now complain that the court has determined issues not before it to the unfair advantage of Guanche." (Emphasis added.)

Following the entry of an amended judgment which included interest, costs, and attorney fees, Foremost appealed to this Court.

On appeal Foremost challenges (1) the finding of the trial court that Guanche intended to and believed he had purchased first party coverage, and that this belief was reasonable, and (2) the legal theory of the doctrine of reasonable expectations, thought to have been utilized by the trial court.

■ We note at the outset that the doctrine of reasonable expectations has since been declared not to be the law in Idaho. *Foremost Insurance Co. v. Putzier*, 100 Idaho 883, 606 P.2d 987 (1980); *Casey v. Highlands Insurance Co.*, 100 Idaho 505, 600 P.2d 1387 (1980). Rather, where there is an ambiguity in an insurance contract, special rules of construction apply to protect the insured. *Casey v. Highlands, supra.* Under these special rules, insurance policies are to be construed most liberally in favor of recovery, with all ambiguities being resolved in favor of the insured. *Abbie Uriguen Oldsmobile Buick, Inc. v. United States Fire Insurance Co.*, 95 Idaho 501, 511 P.2d 783 (1973). "Where language may be given two meanings, one of which permits recovery and the other does not, it is to be given the construction most favorable to the insured."

*Shields v. Hiram C. Gardner, Inc.*, 92 Idaho 423, 427, 444 P.2d 38, 42 (1968). *Accord, Erikson v. Nationwide Mutual Insurance Co.*, 97 Idaho 288, 543 P.2d 841 (1975).

Moreover, although the doctrine of reasonable expectations is not the law in Idaho, there is the closely analogous rule of contract construction pointed out by Justice Donaldson in his opinion in *Corgatelli v. Globe Life & Accident Co.*, 96 Idaho 616, 533 P.2d 737 (1975),[3] wherein, citing *Shields v. Hiram C. Gardner, Inc., supra*, he wrote:

"[t]he doctrine of probability or reasonableness has long been a rule of construction geared toward ascertaining intent in situations of ambiguity. The standard to be applied is what a reasonable person in the position of the insured *would have understood* the language to mean." 96 Idaho at 622, 533 P.2d at 743. (Donaldson, J., dissenting.) (Emphasis added.)[4]

Under this rule of construction, which utilizes an objective standard and which is used in the case of ambiguously written insurance policies, to effectuate the intent of the parties, the test is what a reasonable person in the position of the insured would have understood the language of the contract to mean. This test is not necessarily conclusive as to the intent of the parties, but is only one rule of construction to be considered in construing an ambiguous contract. This standard is, of course, in accord with the general rule of construing insurance contracts against those who write them. *See, e. g., Dunford v. United of Omaha*, 95 Idaho 282, 506 P.2d 1355 (1973).[5]

■ In the present case, however, we are faced with the unusual situation where

3. The rationale of this opinion was adopted by the Court in *Casey v. Highlands*, 100 Idaho 505, 600 P.2d 1387 (1979).

4. The dissenting opinion correctly notes that a portion of Justice Donaldson's dissenting opinion in *Corgatelli* was omitted from the quotation to which this footnote is referred. This was not inadvertence. A close examination of the omission, which is set forth in footnote 2 of the dissent, reveals that it is entirely out of step with the other propositions set forth in Justice Donaldson's opinion, that it, or anything like it, cannot be found in *Shields v. Hiram C. Gard-*

ner, 92 Idaho 423, 427, 444 P.2d 38 (1968), and that there is no authority which has ever espoused that statement, or anything like it. The statement was obviously a slip which passed in the night, most likely in transcription, and should hereafter be disregarded.

5. Under the doctrine of reasonable expectations, on the other hand, the controlling test is a purely subjective one as to what the insured believed he was purchasing, with the only restraint being that that belief be reasonable.

Guanche was never given a policy at all; he had an insurance transaction wherein he was simply told by an agent of Foremost that, in exchange for $300, he was "covered." This is not a case where the insured challenges the terms of the written policy as being ambiguous, but rather a case where he relies upon the oral binder or contract made by the agent. Under these unique facts, we must recognize this transaction as creating a patently ambiguous oral contract of insurance. It was Foremost's responsibility to provide Guanche with a copy of the policy which it believed it was selling to him, I.C. § 41–1824.[6] By not delivering that contract or informing Guanche of its terms Foremost must be bound by the terms of the oral contract. We simply apply the above rules of construction to this oral transaction without regard to the terms of the actual written policy.[7]

This Court was faced with an analogous problem in *Toevs v. Western Farm Bureau Life Insurance Co.*, 94 Idaho 151, 483 P.2d 682 (1971). In that case, a purchaser paid the initial premium on a life insurance policy but died before having had the required physical examination. His widow testified, and the court so found, that there was no discussion as to the date the policy would become effective, and that she expected that it was effective immediately.

"In view of this finding [that the agent did not explain or discuss the effective date of the policy], the unequal bargaining power of the two parties, the complex legalistic and ambiguous phrasing used throughout the contract, and the use by the insurance company of the procedure or device known as 'conditional premium receipt,' this Court holds that a contract of insurance was in existence on the date that the insured died. By this holding the Supreme Court of Idaho is subscribing to the theory known as 'temporary contract of insurance.' The conditional premium receipt created a temporary contract of insurance subject to a condition, i. e., rejection of Toevs' application by the insurance company. Since rejection did not occur prior to Toevs' death, the company is liable." 94 Idaho at 155, 483 P.2d at 686.

In that case, the fact that the agent did not tell the purchaser that he would not be covered until he had undergone the physical exam was one of the factors considered by the Court in holding that the insured was covered in spite of the provision in the policy to the contrary.

■ In the present case, as in *Toevs*, the agent did not tell Guanche of any limitations in his coverage. Further, there could be no more unequal bargaining situation than the present one where Foremost took Guanche's money and never even told (or asked) him what he had purchased. Foremost could easily have told Guanche what he was purchasing, but it did not. As stated in *Roeske v. Diefenbach*, 75 Wis.2d 253, 249 N.W.2d 555, 559 (1977), in regard to an oral contract of insurance, "[i]f insurers desire to incorporate the provisions of their usual policies that are in derogation of the rights of the insured, such provisions must be specifically brought to the attention of the person seeking insurance at the time of the oral agreement." It is the duty of the insurer to inform the insured of what he is obtaining; it is not the duty of the insured to seek out exclusions and limitations not revealed to him. Where an insurance company, or its agent, accepts a premium as was done here, without explaining at all what was being sold, the company does so at the risk of being bound by what a reasonable person in the position of the insured would have understood. We will not look to the terms of an unmentioned, undelivered written policy to defeat coverage in the absence of any attempt by the insurer at explaining to the insured the coverage with which he was being provided.

6. I.C. § 41–1824 requires that "every policy . . . be mailed or delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance . . . ."

7. Since no one challenges the existence of a contract of insurance between Guanche and Foremost, we need not consider that issue.

■ Foremost nonetheless argues that it was unreasonable for Guanche to believe that he had full coverage, that even a glance at the policy would have shown that it was a liability policy. This, under the language of Justice Donaldson in *Corgatelli*, is a proper contention. But, we believe that Foremost misconstrues the relationship between insurer and insured. Just as all limitations in a policy must be construed strongly against the insurer, *Rosenau v. Idaho Mutual Benefit Association*, 65 Idaho 408, 145 P.2d 227 (1944), so, where the insurer does not inform the insured of what he is obtaining beyond the statement that he is "covered," any limitations later put forth by the insurer must be construed against it. Here we are discussing questions of fact.

■ Here we have a situation where the trial court obviously accepted the uncontradicted testimony of Guanche as true, and where he construed the ambiguous oral contract in Guanche's favor: The statement that Guanche was "covered," (*i. e.*, the contract as made by the agent), construed in Guanche's favor, should afford him coverage, since that statement was patently ambiguous. Findings of the trial court that are supported by substantial competent evidence must be affirmed. *E. g., State ex rel. Haman v. Fox*, 100 Idaho 140, 594 P.2d 1093 (1979). We find that there is substantial competent evidence to support the trial court's finding that Guanche intended and understood a purchase of first party coverage, and in that regard that he was acting as a reasonable person for the position he was in.

■ An interesting thought raised by Foremost is its argument *regarding the trial court's apparent reliance on Corgatelli* and the doctrine of reasonable expectations. It must be remembered, however, that this Court will not presume error on the part of the trial court. *State v. Griffith*, 101 Idaho 315, 612 P.2d 552 (1980). Moreover, "where an order of a lower court is correct but is based upon an erroneous theory, the order will be affirmed upon the correct theory." *Anderson & Nafziger v. G. T. Newcomb,*

*Inc.*, 100 Idaho 175, 179, 595 P.2d 709, 713 (1979).

Here the trial court, in holding that Guanche had first party coverage, did not say that it was any particular holding of this Court which he felt obligated to follow, but rather stated "[u]nder the *theories* expounded in *Corgatelli* . . . ." (Emphasis added.) We will not indulge in the presumption that the trial judge in this case read *Corgatelli* without comprehending that only one justice there looked favorably upon the doctrine of reasonable expectations. The trial court could readily see that the other opinion, denominated a dissent and authored by Justice Donaldson, and joined by Justice McFadden, *was the only* plurality opinion which the Court uttered. The two justices who concurred did not deign to disclose the theories which gained their votes. A careful reading of both of the *Corgatelli* opinions, moreover, shows that many earlier sanctioned theories other than the doctrine of reasonable expectations were given full consideration. Those theories, which still apply regardless of the doctrine of reasonable expectations, included such precepts and acknowledgments as that: a layman "expects that he will be generally insured;" that "usually an insured never sees his policy until after he has paid his premium and the contract has been formed." 96 Idaho at 619, 533 P.2d at 740. Another theory, set forth in the dissent, and which we have already quoted and discussed, presents the standard of "what a reasonable person in the insured's position would have understood." Further, as a matter of factual resolution, the trial court concluded that Guanche in essence was within the "doctrine of probability or reasonableness." 96 Idaho at 622, 533 P.2d at 743.

Regardless, we find it unnecessary on our part to pin down with exactitude which of the many theories, all of which have application to varying degrees, brought the trial court to its ultimate conclusion. This Court has many times stated that it will affirm on a correct legal theory utilizing the trial court's findings where those findings are

substantiated. Here we have undisputed evidence which establishes the following: that Guanche paid a rather substantial sum of money for a rather short period of coverage, that an agent of Foremost told him he was "covered," and that Guanche's understanding that he had purchased and paid for first party coverage was that of a reasonable person under the circumstances of a person in his position. Applying the standard rules of construction for insurance contracts (to which we add insurance transactions) that all ambiguities are to be resolved against the insurer, and that what a reasonable person in the position of the insured would have believed to be the meaning of the language used is the standard to be used in resolving ambiguities— we are not persuaded that the trial court erred in concluding that Guanche had first party coverage protecting him against the losses which he sustained.

The judgment is affirmed, with costs, including I.C. § 41–1839 attorney fees, to respondent.

DONALDSON and SHEPARD, JJ., concur.

BAKES, Chief Justice, dissenting:

The most telling statement in the majority opinion is as follows: "Here we are discussing questions of fact." The majority does make findings of fact, most notably that Foremost and Guanche had entered into an *oral* contract of insurance for first party coverage.

The majority's finding in that regard is belied by the trial court's statement in Finding of Fact 15. "The record will not support any finding that Guanche ever advised [Foremost] of the type or kind of insurance he desired...." Nowhere did the trial court conclude that there came into being an oral contract of insurance. Nevertheless, the majority finds an oral contract of first party coverage in the face of an explicit finding by the trial court that Guanche never told Foremost's agent what he wanted in the way of coverage. The

secret, unexpressed and uncommunicated intentions of a contracting party do not become part of the contract. See *Amann v. Fredrick*, 257 N.W.2d 436 (N.D.1977); *Wesco Realty, Inc. v. Drewry*, 9 Wash.App. 734, 515 P.2d 513 (1973); 1 Williston on Contracts § 22 (3d ed. 1962). *Cf. Benner v. Farm Bureau Mutual Ins. Co. of Idaho, Inc.*, 96 Idaho 311, 312, 528 P.2d 193, 194 (1974) (oral contract of insurance found where insured expressly requested the particular coverage to agent who proclaimed that he would "take care of everything").

The majority fails to discuss some of the more salient facts of this case. State and county licensing authorities had required Knievel and Snake River Canyon Enterprises to obtain liability insurance covering the event in question. First party coverage was not required. Representatives of Foremost, Knievel and Snake River Canyon Enterprises then negotiated the same insurance policy at issue in both this appeal and in *Foremost Insurance Co. v. Putzier*, 100 Idaho 883, 606 P.2d 987 (1980). Foremost was informed that some of Knievel's concessionaires might be added as additional insureds on the policy.

Representatives of Knievel and Snake River Canyon Enterprises in turn informed Guanche that he, too, would need insurance. There is no indication that Guanche would have purchased any insurance but for the fact that Snake River Canyon Enterprises required it. Guanche testified that he was too busy to "take care of insurance," and that he thought representatives of Knievel and Snake River Canyon Enterprises would "take care" of him. They did. He was made an additional insured on Snake River Canyon Enterprises' liability policy.

Guanche's testimony does demonstrate that he thought he was "fully" covered. When asked who had informed him that he had "full" coverage, he answered that it was the representatives of Knievel and Snake River Canyon Enterprises, and not any agent of Foremost. Guanche did testify that Foremost's agent informed him that

he was "covered," although Guanche never asked the agent what for.[1]

The entire transaction is summarized neatly in Guanche's amended counterclaim. "Guanche contracted with Snake River Canyon Enterprises, Inc., to provide food and beverage concessions ... and as a part of said contract, *was required to maintain certain liability insurance in force. Guanche contacted Foremost Insurance Company and asked to have the required insurance coverage provided.* Foremost agreed to provide the coverage and merely added Guanche's name as an additional named insured to the policy of insurance described in the Complaint." (Emphasis added.)

Finally, it is clear, although the majority refuses to recognize it, that the court below based its decision squarely upon the now discredited doctrine of reasonable expectations.[2] In Finding of Fact 16, the trial court stated that Guanche "intended" to insure his property; that he "believed" he had first party coverage; and that such belief was "reasonable ... under the facts in this case." On the basis of these "facts" and the "theories expounded in *Corgatelli v. Globe Insurance*," the trial court concluded that there did indeed exist a contract for first party coverage between Foremost and Guanche. In so concluding the trial court held as a matter of law that "Guanche's intentions and expectations [are] paramount in interpreting the terms of any insurance contract existing between Guanche and [Foremost]."

The above legal conclusion was erroneous, the doctrine of reasonable expectations having been "expressly rejected ... in favor of traditional contract rules of construction." *Foremost Ins. Co. v. Putzier*, 100 Idaho at 888, 606 P.2d at 992. That being the case, we ought to reverse and remand the case for a new trial in order to give the lower court an opportunity to correct its legal error. But in no event should this Court decide the case on a legal theory not even asserted by Guanche, and then make an appellate finding of fact that there was an oral contract of first party insurance. There is no evidence to sustain such an appellate finding, and it is directly contrary to the trial court's express finding that Guanche never "advised [Foremost] of the type or kind of insurance he desired ...." I would reverse.

McFADDEN, J., concurs.

---

1. What are, I wonder, the outer limits of Guanche's oral contract for insurance "coverage"? If a Mrs. Guanche was blessed with a child during Knievel's jump, could Guanche recover maternity benefits? How about life insurance for any children, or Guanche's horse? I think the limits of Guanche's coverage should be established, not by his secret and unexpressed desires, but by the context in which the insurance was obtained. Thus, the trial court should consider the probability that Guanche intended to procure, and Foremost intended to sell, only that coverage which satisfied the county's requirements, which did *not* include first party coverage.

2. The majority quotes some language from the *Corgatelli* dissent in support of its assertion that an ambiguous insurance contract should be construed in accordance with the understandings of a reasonable person in the position of the insured. The majority failed to quote the preceding sentence in the *Corgatelli* dissent. "If the meaning of the contract is in doubt, it must be construed in the sense in which the insurer believed, at the time of making, the insured understood the terms." *Corgatelli v. Globe Life & Accident Co.*, 96 Idaho 616, 622, 533 P.2d 737, 743 (1975) (Donaldson, J., dissenting). If that standard were applied to the instant case, there could be no doubt as to the end result. In Guanche's case, Foremost was merely adding an additional insured to a negotiated special policy of liability coverage. Any reasonable insurance agent would be mildly astonished to discover that Guanche's unexpressed desires would ripen into first party coverage.