Chief Justice JIM JONES
concurring in part and dissenting in part.
I concur in the Court’s opinion, with the exception of the award of attorney fees to Safeco. While the Parks’ claims are not articulated particularly well, it appears to me that they were asking for an extension of existing law and I would therefore not characterize the ease as having been pursued frivolously within the meaning of Idaho Code section 49-1839(4).
This case presents some equities in favor of the Parks but those equities are outweighed by the specific language written by Safeco into its insurance policy. It is fairly obvious that the Parks’ attorney allowed his concept of “replacement” to outweigh the limiting language employed in the policy’s replacement cost option. As defined in the policy, “replace” does not necessarily have the meaning that comes to mind in everyday life. Webster’s New World Dictionary defines replace in this context as “to provide a substitute or equivalent for.” However, the policy defines the full cost of replacement as “the full amount actually and necessarily incurred to ... replace the damaged building.” So, the policy only provides for payment of the cost incurred by the insured to replace the building. The Parks argue that the replacement building should be equivalent in size and quality to the building that was destroyed. That is not an unreasonable argument but it conflicts with the policy language. In addition to the not unreasonable assumption of equivalency of the replacement, counsel for the Parks appeared to have been thrown off by the determination made by Belfor Construction on behalf of Safeco that the cost to replace the Parks’ house with equivalent construction was $440,195.55. At oral argument of this ease, Safeco’s counsel conceded that had the Parks chosen to have the house rebuilt on the same lot where it had stood when the fire occurred or had the Parks purchased a house valued in excess of the Belfor estimate, the Parks would have received the full $440,195.55. It is not entirely clear that Safeco would have agreed because, as an alternate to the replacement provision, the policy provides for payment of the “direct financial loss you incur,” and provides that the lesser of the two amounts will be paid. Arguably, the direct financial loss incurred by the Parks would have been closer to the $169,000 paid to the Parks as the “actual cash value” of the destroyed home under other provisions of the policy.
The Parks could have challenged the actual cash value determined by Safeco, but they did not. Their counsel invoked the replacement cost option 181 days after the date of loss. Safeco overlooked the 180-day deadline for making claim based on the replacement cost option, which resulted in an additional $86,000 being paid to the Parks for the purchase of the Idaho Falls home.
In the correspondence that led up to the Parks’ invocation of the replacement cost option, it is fairly clear that there was a misunderstanding between Safeco and the Parks’ counsel regarding what would be paid. In a letter to the Parks’ counsel, dated September 20, 2012, Safeco provided a copy of the Belfor estimate, stating that it was “a bid for the replacement of the Parks’ home, using equivalent construction.” By letter dated November 24, 2012, Safeco said that it would “pay the replacement cost of the dwelling up to $440,195.55 or the amount actually incurred, whichever is less.” In a letter to Safeco, dated December 26, 2012, the Parks’ counsel invoked the replacement cost option, indicating that the Parks had decided to purchase an existing home and stating an expectation that the Parks would receive an additional $271,195.55 over and above the $169,000 they had already received. Safeco responded on December 27, indicating that it would pay “the amount actually spent” for the replacement home. It is likely that the Parks then realized the Belfor estimate would not be the basis for payment because *565 the record indicates they did not furnish the purchase documents for the Idaho Falls home until five months later and after several requests by Safeco to furnish the same.
The Parks make a number of arguments that have some appeal but they simply cannot get over the explicit language employed in the insurance policy. The Parks seem to be arguing that their reasonable expectations should prevail over the language in the policy, but this Court long ago rejected the reasonable expectations doctrine, shortly after having adopted the same. In 1979, I found myself in the awkward position of presenting an insurance coverage case to the Idaho Supreme Court shortly after it had disavowed the reasonable expectations' doctrine. My written briefing, submitted before the disavowal, asserted that doctrine in support of coverage. According to the Court:
The thorn of Corgatelli v. Globe Life & Accident Ins. Co., 96 Idaho 616, 533 P.2d 737 (1975), which made the adoption of that doctrine in Idaho a debatable question, was recently removed from the side of our jurisprudence. Casey v. Highlands, 100 Idaho 505, 600 P.2d 1387 (1979), decided after this appeal was brought, expressly rejected the doctrine of reasonable expectations in favor of traditional contract rules of construction.
Foremost Ins. Co. v. Putzier, 100 Idaho 883, 888, 606 P.2d 987, 992 (1980). My client, Robert C. Knievel, a/k/a Evel Knievel, lost out in that case and the Parks must similarly lose out in this ease. However, I think they made a valiant enough effort to escape the award of attorney fees against them.